---

### In re ROME.

(District Court, D. New Jersey. January 2, 1908.)

1. BANKRUPTCY—REFEREE'S ORDER—REVIEW—OBJECTIONS NOT MADE BEFORE REFEREE.

An objection to the re-examination of a claim because of the trustee's laches in applying therefor, not having been pressed before the referee, would be considered as waived on petition to review.

2. SAME—PETITION FOR REVIEW—LACHES.

Where an order expunging a creditor's claim against a bankrupt was entered July 29, 1907, and the creditor's petition for review was filed on August 26th following, the creditor, having for several weeks prior to and after the filing of the order been traveling in Western Pennsylvania and Ohio, was not guilty of such laches in filing the petition to review as authorized its dismissal on such ground.

3. SAME—CLAIMS—DISALLOWANCE—FINDINGS.

Evidence *held* to sustain a referee's finding that petitioner had no valid claim for money alleged to have been loaned the bankrupt.

4. SAME—ADVANCEMENTS AFTER BANKRUPTCY PROCEEDINGS.

A claim cannot be maintained against a bankrupt's estate for money advanced to the bankrupt after the commencement of bankruptcy proceedings.

5. SAME—COSTS—ATTORNEY'S FEES.

Where, on re-examination of the allowance of certain claims against a bankrupt's estate, it was found on sufficient evidence that the claims were unsustainable, the referee properly required the claimant to pay the costs of the hearing, but he was not authorized to require that the trustee also pay an attorney's fee to the trustee's attorney.

On Petition to Review a Referee's Order Expunging Petitioner's Claim Against the Estate of Harris Rome, Bankrupt.

George H. Peirce, for petitioner.

David H. Bilder, for trustee.

LANNING, District Judge. A petition to have Harris Rome adjudged an involuntary bankrupt was filed on May 31, 1905. An order

adjudging bankruptcy was entered June 19, 1905. On August 1, 1905, the bankrupt filed his schedules. On August 16, 1905, Rayton E. Horton was appointed trustee. On October 21, 1905, Simon Fleischman's claim for $6,900 was allowed and filed by the referee. On June 15, 1906, the trustee filed with the referee a petition praying for a re-examination of Fleischman's claim, on which an order for re-examination was made pursuant to section 6 of the twenty-first general order in bankruptcy (32 C. C. A. xxiii; 89 Fed. xxiii). Depositions were taken under the order, and on July 29, 1907, an order was made by the referee expunging the claim, and also adjudging that Fleischman pay to the trustee his taxed costs in the proceeding, and to the trustee's attorney a counsel fee of $50. On August 26, 1907, Fleischman filed his petition to review the referee's order. The present hearing is upon the last-mentioned petition.

It will be observed that the trustee did not file his petition for a re-examination of Fleischman's claim until nearly eight months after the claim was filed and allowed, and one of the grounds upon which the petition to review is based is that the trustee was in laches in not taking earlier proceedings to secure an order expunging the claim. This point, however, was not pressed before the referee, and therefore must now be considered as having been waived.

The trustee has also moved in this court to dismiss the petition to review on the ground of laches on the part of the petitioner in the filing of his petition. It will be observed that the order of the referee expunging the claim was entered July 29, 1907, and the petition to review filed August 26, 1907. The evidence shows that the petitioner, who resides in Philadelphia, was for several weeks previous to and after the filing of the order expunging the claim traveling on business in Western Pennsylvania and Ohio. I am satisfied that he acted with reasonable diligence in filing his petition to review and that it ought not to be dismissed on the ground of laches.

It becomes necessary therefore to dispose of the petition on its merits. The claim is based on four promissory notes, each admittedly signed by the bankrupt, each payable on demand to the order of Simon Fleischman, the first dated October 22, 1903, for $3,000, the second December 23, 1903, for $1,000, the third February 24, 1904, for $1,500, and the fourth March 21, 1904, for $1,000. There is also an additional item in the claim of $400, stated to be for cash advanced by Fleischman to Rome on June 6, 1905. This last item was properly rejected by the referee on the ground that the money was not advanced until after the commencement of the bankruptcy proceedings.

It appears by the record sent up by the referee that Fleischman was in Paterson in June, 1905. The exact date of his presence there is not disclosed, but it was probably early in June. I reach this conclusion because it appears that he was examined as a witness in the bankruptcy proceedings. This examination must have been under the provisions of section 21(a) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430]), since the adjudication was made on June 19th and the first meeting of creditors could hardly have been had in June. Isaac L. Miller, who keeps a hotel in Paterson, testifies that Fleischman was at his hotel in June,

and that, Fleischman having introduced himself to Miller as a cousin or second cousin to the bankrupt, Miller said to Fleischman:

"Are you one of the friends he (the bankrupt) stuck the same as in Paterson?"

And that Fleischman answered:

"No, I have been fortunate enough not to be stuck for a cent. He never came near to me before. Now is the first time I heard of his trouble, and when I came to see what was the trouble."

Walter R. Hudson is an attorney and counsellor at law in Paterson. He says that he met a man in Paterson who said he was the bankrupt's cousin, that he asked the man if he was a creditor, and that the man replied that he was in Paterson "simply to help Rome if he could." Mr. Hudson declares that at the time he and others were seeking to effect a settlement with the bankrupt. While Mr. Hudson does not positively identify Fleischman as the man with whom he had the conversation, there is little doubt but it was he. Mr. Harris Westerhoff is also an attorney at law in Paterson. He says he had a conversation with Fleischman in June, and, learning that Fleischman claimed to be a cousin to the bankrupt, he asked Fleischman:

"Whether Rome owed him any money, whether he borrowed from him. And he said 'No.' I asked him what he was here for. He said: 'If I can help him out, I want to.'"

Harris Rosenstein says that in June he had the bankrupt arrested for misappropriating $600 of the money of the Hebrew Relief Society, and that subsequently, after the bankrupt had given bail, he (Rosenstein) and David Fuchs went to Philadelphia with the bankrupt to see Fleischman, and that on that occasion Fleischman arranged to help the bankrupt to the extent of $400, which amount represents the last item in Fleischman's claim above referred to. While in Philadelphia, which must have been on June 6th, since Fleischman's check for $200 of the $400 bears that date, Rosenstein says the following conversation took place:

"I asked him (Fleischman) was he stuck in money. He said: 'No, he did not call on me for money, but now I am willing to back him as far as $10,000.'"

He further says that Mr. Fuchs was present at the time of this conversation. Mr. Fuchs testifies that he went with Rosenstein and the bankrupt to Philadelphia in June, 1905, and met Fleischman. I quote the following excerpt from his testimony:

"Q. At that time did you have any conversation with Mr. Fleischman as to his interest in these proceedings? A. Yes. Q. Tell us the substance of the conversation? A. We went over about a note and check to the Hebrew Relief Society, and had a conversation with him about Rome. We spoke about it. He had stuck everybody in Paterson. Q. You told him he had stuck everybody in Paterson? A. Yes; we asked him if he was a friend of his, and if he got stuck, too, and he said, 'No, he never showed up before. If he would have come, I might have helped him out, but he never showed up.'"

William O. Mickel, an attorney at law in Paterson, says that the bankrupt, claiming to act for Fleischman, authorized him to sign a

consent for Fleischman, as a creditor to the amount of $400, to the making of a certain order by the referee.

The bankrupt filed his schedules of assets and liabilities on August 1, 1905. In the list of unsecured creditors is this one:

"Sam'l Fleischman, Phila. Pa., Loan, etc. (holds notes for $6,500)—$6,900."

The words "Loan, etc. (holds notes for $6,500)," are admittedly in a hand different from that in which the rest of the Fleischman item is written and different from the other 18 items on the same page. The total amount, "6,900," has been written over an erasure; the "6" being evidently written over a "2." The name "Sam'l" is a misnomer for "Simon."

These statements and facts certainly call for satisfactory evidence on the part of Fleischman to support his claim. He has sought to support it by the testimony of himself and his wife and of the bankrupt and his daughter. Notwithstanding the testimony of these four witnesses, the referee has rejected the claim. He has filed an opinion which is a sad commentary on the credibility of these four witnesses. The claim cannot be rejected on any other theory than that they are unworthy of belief. It is a serious matter to reject the claim on such a ground. But their statements bear such marks of inherent improbability, and in some respects are so inconsistent with one another, that I have been forced to a conclusion in accord with that expressed by the referee. I need not undertake to analyze their testimony. It has been well done by the referee. I will only add that I have carefully read and re-read their testimony, and the testimony of the other witnesses, and that I am satisfied with the conclusion reached by the referee.

The only remaining question is as to whether the order that Fleischman pay costs and also a fee of $50 to the trustee's counsel shall stand. Inasmuch as the conclusion reached is that the claim is not one that has been pressed in good faith, the decision that Fleischman shall pay the costs, amounting to $88.75, is right. The order that he pay a fee of $50 to the trustee's counsel, however, I think is erroneous. No such fee is expressly authorized by the statute, and, although in bankruptcy proceedings the court may apply the rules of equity, I know of no rule of equity that authorizes the court to require the defeated party, in a suit to collect on a promissory note, to pay a counsel fee to the attorney of the successful party. The order of referee should therefore be amended by striking out the last clause requiring a fee of $50 to be paid to the trustee's attorney.

As thus amended, the order is affirmed.