In re ST. LAWRENCE CONDENSED MILK
CORPORATION.

Petition of ST. LAWRENCE CONDENSED
MILK CORPORATION et al.

(Circuit Court of Appeals, Second Circuit.
November 2, 1925.)

No. 11.

1. Bankruptcy ⊚⟶318(2)—Contract held not to create provable debt against alleged bankrupt.

Contract whereby alleged bankrupt corporation agreed to employ manager until he received one-third of outstanding stock of bankrupt, as provided in contract between him and third parties, held not to create provable debt against bankrupt for stock within Bankruptcy Act, § 1 (9), being Comp. St. § 9585.

2. Bankruptcy ⊚⟶77, 81(3)—Requirements of court's jurisdiction of involuntary proceeding stated; debts must be alleged with particularity.

Under Bankruptcy Act, §§ 1 (9), 59b (Comp. St. §§ 9585, 9643), provable debts against bankrupt must be due to each of three petitioning creditors in amount required thereby, to give court jurisdiction, and existence and nature of debts must be alleged with particularity, to enable court to find from petition the essential jurisdictional facts.

3. Bankruptcy ⊚⟶92—Motion to dismiss involuntary petition should be granted, where defects appear on petition and annexed schedule.

Where involuntary petition and annexed schedule showed that one of petitioners was not bankrupt's creditor, and that debts due others did not amount to $500, as required by Bankruptcy Act, § 59b (Comp. St. § 9643), court should have granted motion to dismiss petition, where no other parties were brought in under section 59f.

4. Pleading ⊚⟶406(3)—Filing of answer did not waive defect in original involuntary petition, raised by motion to dismiss.

Filing of answer did not waive defect in original involuntary petition, under Bankruptcy Act, § 59f (Comp. St. § 9643), raised by motion to dismiss petition.

5. Bankruptcy ⊚⟶92—Requiring nonpetitioning creditor and directors of alleged bankrupt to file stipulation guaranteeing payment of receivership expenses, before dismissal of involuntary petition, held abuse of discretion.

Requiring nonpetitioning creditor and directors of bankrupt, over their objection, to file stipulation guaranteeing payment of receivership expenses, before granting their motions to dismiss involuntary petition, held abuse of court's discretion, where petition was defective on face, and recital of stipulation in order dismissing petition was unnecessary and immaterial.

6. Bankruptcy ⊚⟶92—Dismissal of involuntary petition may be had on bankrupt's motion, without notice to creditors not intervening, in absence of collusion.

Bankruptcy petition must end in adjudication or dismissal, and, before court will enter-

tain application for dismissal, bankrupt must file list of creditors and cause notices to be served on such creditors, but in absence of suggestion of collusion dismissal may be had on bankrupt's motion, without notice to creditors not intervening.

7. Bankruptcy ⊚⟶474—Where involuntary petition was dismissed as defective, petitioning creditors must bear expenses of proceeding.

Where involuntary petition was dismissed as defective, petitioning creditors must bear expenses of proceeding, and allowance of receiver's fees and attorney fees against respondent and creditors resisting proceeding is improper, and is not justified by their stipulation guarantying payment exacted by court before granting motion to dismiss.

8. Bankruptcy ⊚⟶474—Involuntary proceeding to obtain settlement of petitioner's claims against third parties held fraud on court.

Involuntary bankruptcy proceeding, brought in effort to obtain settlement of petitioner's claims against third parties, held fraud on court.

Petition to Revise Order of the District Court of the United States for the Northern District of New York.

In the matter of the St. Lawrence Condensed Milk Corporation, alleged bankrupt. On petition of alleged bankrupt and others to revise that part of an order of the District Court which fixes allowances to receivers of alleged bankrupt and their attorneys. Order modified.

Petition to revise that part of an order which fixes allowances to the receivers of the alleged bankrupt and their attorneys. The petition is filed by the alleged bankrupt, Brown & Bailey Condensed Milk Company, a creditor, Charles W. Slaughter and Theadore G. Caldwell, directors of the Brown & Bailey Condensed Milk Company, and Henry I. Ober, a stockholder of the bankrupt. Modified.

Sparks & Fuller, of Brooklyn, N. Y. (Jesse Fuller, Jr., of Brooklyn, N. Y., of counsel), for revising petitioners.

Lawrence Russell, of Canton, N. Y., and Frank L. Cubley, of Potsdam, N. Y., for respondents.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. A petition in involuntary bankruptcy was filed against the alleged bankrupt on the 21st of December, 1923, by three petitioners—one, Rowland B. Page, president and general manager of the alleged bankrupt, and two small creditors. The claim of Page set forth that the exact amount of the claim is ascertain-

able only by means of an accounting by the corporation, and it was petitioned that under section 63 of the Bankruptcy Act (Comp. St. § 9647), the claim be liquidated by an accounting to be made by the corporation pursuant to a decree of the court, and that it be thereafter proved and allowed against the estate of the bankrupt corporation.

Concededly the claim of Page arises from a contract, made and entered into by the bankrupt, whereby he was employed as general manager, and whereby it was agreed that he should receive as compensation $100 per week, and that there be "issued to him one-third of the capital stock thereof" when certain payments should have been made to one Caldwell and Bailey as trustees. A copy of this agreement is annexed to the petition and marked Schedule A. That exhibit provides for his employment to begin on November 1, 1917, and to continue until he shall have received from Caldwell and Bailey one-third of the issue of outstanding stock of the corporation, as provided in the agreement between Page, Caldwell, and Bailey. This latter agreement was dated November 1, 1917. It is clear from Schedule A that the corporation did not, in that contract, agree to give Page any compensation except $100 per week, and whatever claims he may have had for the stock were against Caldwell and Bailey, for they agreed to share their individual stockholdings with Page upon the happening of certain conditions. At the time of signing the petition, Page had no claim against the corporation.

It appears from the record that the Brown & Bailey Condensed Milk Company had a place of business in Brooklyn and dealt in condensed milk. Prior to November, 1917, Page was introduced to the Brown & Bailey Condensed Milk Company, and after some negotiations Page undertook to organize the St. Lawrence Condensed Milk Company to deal in case goods, which was to be under his management and direction. Thereupon a promoter's agreement was entered into on November 1, 1917, between the stockholders of the Brown & Bailey Condensed Milk Company and Page, under which it was agreed that the stockholders would advance $100,000 in exchange for capital stock in the new corporation; that an option would be procured for the new corporation on the plants of the Brown & Bailey Condensed Milk Company for $90,000, and that a lease would be obtained pending the purchase. Thereupon the agreement for Page's employment at $100 per week was made.

9 F.(2d)—57

The bankrupt was organized on November 9, 1917, and a lease was made of the Brown & Bailey Condensed Milk Company's plant. The new company prospered until January, 1923, when a difference of opinion arose in the board of directors over the question of winding up the corporation; the right to do so having been reserved in the original charter of the corporation. This gave rise to a controversy, but the business was continued during the year 1923. The Brown & Bailey Condensed Milk Company advanced money to the extent of $100,000 from time to time during 1923, in order to pay the bills owing by the alleged bankrupt. On October 2d it was decided to dissolve the corporation, and turn back the plants to the Brown & Bailey Condensed Milk Company, and to discontinue the case goods business unless within the next 40 days Page should procure a purchaser for the corporate assets sufficient to pay all the corporate obligations and leave some surplus. Page, who is a director of the alleged bankrupt, later was present at a meeting of the board of directors at which it was resolved to dissolve the corporation. Releases were executed, canceling and discharging the promoter's agreement of November 1st and the agreement of employment of Page. But Page was employed at $100 per week as manager of the Brown & Bailey plant and received his pay up to November 21st. It was later that Page made claim to the capital stock of the bankrupt.

It appears that the very next day, and continuously thereafter, he was in conferences with his attorneys, and this resulted in his signing a petition in bankruptcy on December 18th. On the next day, Page and his attorneys appeared before the District Judge on their application for the appointment of receivers. On December 20th they appeared at the office of the alleged bankrupt in Brooklyn, New York City, where a meeting of the board of directors was scheduled to be held, and filed a statement purporting to show that the surplus of the alleged bankrupt over all obligations was $187,000, and thereupon demanded payment of one-third of the same. Upon refusal, they returned to Albany, and on the afternoon of December 21st filed their petition in bankruptcy, and a petition asking for the appointment of receivers, which was granted, and the present receivers were appointed. No notice of this appointment was given until December 24th, when an application was made for the appointment of ancillary receivers in the District Court for the Eastern District of

New York. Thereafter the books of the alleged bankrupt were seized. Overtures for the settlement of the claim were made by Page and his attorneys, but his terms were not met. The other petitioning creditors were a garage keeper, who had a claim of $270.24, and a repairman, with a claim of $22.95.

After notice of the appointment of the receivers, and on December 23d, the petitioners applied for an order, which was signed by the District Judge, directing the petitioning creditors and the receivers to show cause on January 2, 1924, why the appointment of the receivers should not be vacated and the petition in bankruptcy dismissed. This order to show cause was made on the petition of the Brown & Bailey Condensed Milk Company, by its president, Theodore G. Caldwell, which petitioner was an unsecured creditor to the extent of $250,000. On the return day of the order to show cause, a postponement was had, but on December 5, 1924, after argument, the court reserved decision. Thereafter, on December 8, 1924, a stipulation was filed with the court on behalf of the alleged bankrupt, Brown & Bailey Condensed Milk Company, William W. Walsh, Jr., and Charles W. Slaughter, who with Caldwell comprised a majority of the board of directors of the Brown & Bailey Condensed Milk Company, and also on behalf of Walsh, Slaughter, and Henry I. Ober, who, with Caldwell, comprised the majority of the board of directors of the St. Lawrence Condensed Milk Company, by which it was agreed that, if the receivers were dismissed, the alleged bankrupt would be continued in business, occupy its plants for a period of six months, and that all its records should be open to the examination of Page, and any offer to purchase its assets procured by Page should, if not accepted, fix their value for the purpose of determining the amount of Page's claim, if any; that an inventory should be taken, and that certain directors of the alleged bankrupt would guarantee the payment of any claim that Page might establish. Immediate payment was guaranteed of all other claims against the alleged bankrupt.

This proposed offer was rejected by Page's attorneys in a letter addressed to the District Judge. Thereafter answers were filed on behalf of the Brown & Bailey Condensed Milk Company, denying insolvency, the acts of bankruptcy alleged in the petition, and alleged the possession by the alleged bankrupt of the cash reserve sufficient for the payment of all outstanding claims against it. However, on February 7, 1924, on petition of the receivers, an order was made by the District Judge directing the alleged bankrupt and the Brown & Bailey Condensed Milk Company to show cause why an order should not issue impounding the books of both companies relating to the allegations made by Page in the involuntary petition in bankruptcy. This motion came on for hearing on February 16, 1924, and decision was reserved. An application was heard on February 16th for a dismissal of the petition in bankruptcy and a vacation of the receivership. These motions were heard together and decision on each reserved. Thereafter, on March 22, 1924, the District Judge addressed a letter to counsel, stating that, "to aid in decision of the motions to dismiss," he would require, among other things, a stipulation to be executed by the Brown & Bailey Condensed Milk Company and by the directors of the alleged bankrupt to pay the costs and expenses of the receivership.

After opposition, and on April 5, 1924, this proposed stipulation was filed with the court pursuant to the direction of the District Judge's letter. It was executed by the Brown & Bailey Condensed Milk Company, Caldwell, Ober, and Slaughter, directors of the alleged bankrupt, and guaranteed, among other things, the payment by the alleged bankrupt of such sums as the court should fix as a reasonable allowance for services performed by the receivers and their attorneys. Thereafter an order was signed by the District Judge, which, after reciting the stipulations, various orders, petitions, and affidavits filed in the proceeding, stated that, "it appearing doubtful whether or not said involuntary petition does show a provable debt or claim in favor of Rowland B. Page against said alleged bankrupt," ordered the dismissal of the petition and vacation of the order appointing the receivers, effective April 30, 1924. The property was turned over to the alleged bankrupt. The receivers thereafter filed their account, and on notice and after objection the court made allowances to the receivers of $6,600, and $1,175.74 as disbursements, and $7,000 to their counsel, with disbursements of $778.27. The order provided that the receivers apply the funds in their possession, fixed at $12,572.36, on account of the allowances, and directed the stipulators to deposit forthwith to the credit of the receivers, with a bank within the district, the additional sum of $3,839.90, needed to complete the sum required for the payment of these allowances. Thereafter a

reargument was had of the matter, and on November 6, 1924, an order was entered reducing the allowances to the receivers by $300, and a reduction of $700 to their attorneys. The allowances for disbursements remained unchanged.

[1, 2] It affirmatively appears, from the claims set forth in the petition in involuntary bankruptcy, that Mr. Page did not have a provable debt against the alleged bankrupt. His claim is based upon alleged breaches of the agreement marked Schedule A, and it there appears that the claim he asserts did not and could not arise from a breach of that contract. His claim, if any, for failure to deliver the stock to him, was not against the alleged bankrupt. By section 1, subd. 9, of the Bankruptcy Act (Comp. St. § 9585), a creditor means any one who owns a demand or claim provable in bankruptcy against the bankrupt, and section 59b (Comp. St. § 9643) requires that there be three or more creditors whose provable claims against any person amount in the aggregate to $500 or over, before they may file a petition to have him adjudged a bankrupt. Furthermore, it is required that there exist provable debts due to each of the petitioning creditors in the required amount in order to give the court jurisdiction of the proceeding, and the existence of such debts and their nature must be alleged with particularity and definiteness, so as to enable the court to find from the petition the essential jurisdictional facts. In re Farthing (D. C.) 202 F. 557.

[3, 4] Since it appears, from an examination of the petition and its annexed Schedule A, that Page was not a creditor within the meaning of the Bankruptcy Act, the petition was signed by two creditors, and their combined credits did not amount to the sum of $500. By subdivision (f) others than the original petitioners may come in a proceeding which has already been instituted under section 59b, but no such application was made in this proceeding. For this defect in the original petition, a motion to dismiss is the proper remedy, and the filing of the answer did not waive the defect raised on the motion to dismiss. Teal v. Walker, 111 U. S. 242, 4 S. Ct. 420, 28 L. Ed. 415; In re Jones (D. C.) 209 F. 717. It appearing that there was this defect upon the face of the petition, the court should not have appointed receivers; and on January 5, 1924, when the court heard the motion to dismiss the petition, it should have been promptly granted, for the petition was clearly bad on its face.

[5] We are unable to understand why the filing of a stipulation by the petitioners guaranteeing the payment of receivers' and attorneys' allowances should in any way have aided the court in reaching a decision on the motion to dismiss. We hold that it was an abuse of discretion and without warrant of law to require the stipulators to guarantee the payment of such allowances and particularly requiring them to guarantee the payment of any claim of Page. The court below dismissed the petition, reciting that the stipulation was filed guaranteeing the payment of any claim of Page as well as receivers' allowances, and this after reciting that "it appearing doubtful whether or not said involuntary petition does show a provable debt or claim in favor of Rowland B. Page against the alleged bankrupt."

[6, 7] A petition in bankruptcy must end either in adjudication or dismissal. Before a court will entertain an application for a dismissal, a bankrupt must file a list of his creditors, with addresses, and cause notices to be served on such creditors. A dismissal may be had on motion of the bankrupt, without notice to the creditors who have not intervened, where there is no suggestion of collusion. We must assume that, when the court dismissed this petition, it did so because of the defect appearing on the face of the petition. The dismissal was therefore after a trial had—after hearing the motion. The recitals referred to were therefore unnecessary, and we shall deem them irrelevant to the order entered. There was no consent, for it was done over the opposition of the petitioning creditors. The petition having been dismissed because it was bad, the petitioning creditors must bear the burden of the expense. This rule has been long established. It was announced in this circuit as far back as 1905 in In re Lacov, 142 F. 960, 74 C. C. A. 130, and later in 1910 in In re Aschenbach, 183 F. 306, 105 C. C. A. 517. The stipulation required by the District Judge as to the payment of the claim of Page and of the receivers' allowances was therefore unauthorized, and, although given by the stipulators, we must assume that they did it as a result of the direction of the letter of March 22, which we consider was uncalled for and unauthorized in law.

[8] This bankruptcy proceeding was commenced as an effort on the part of Page to obtain a settlement of his alleged claim. It was not a faithful effort to invoke the aid of the Bankruptcy Act, but was a fraud up-

on it. The argument that the alleged bankrupt and stipulators voluntarily stipulated to make the District Judge an arbitrator about the fees is without force. They did not voluntarily enter into this stipulation. They were forced into this position, and under the circumstances will be relieved of any of its binding or enforceable terms. The order will be modified, by striking therefrom the allowances to receivers and their counsel, as well as their disbursements.

Order modified.