258 F.2d 826
 Lewis H. SAPER and I. Arnold Ross, Petitioners-Appellants,
v.
JOHN VIVIANE & SON, INC., John Viviani, Barbara Viviani and
James R. Curreri, Jointly and severally,
Respondents-Appellees.
Matter of JOHN VIVIANE & SON, INC., Bankrupt.
 No. 223, Docket 24653.
 United States Court of Appeals Second Circuit.
 Argued Jan. 8-9, 1958.
Decided July 25, 1958.
 
 I. Arnold Ross, New York City, for appellants.
 James R. Curreri, New York City, for appellees.
 Before HINCKS, LUMBARD, and WATERMAN, Circuit Judges.
 WATERMAN, Circuit Judge.
 
 
 1
 This is an appeal by a trustee and his attorney from an order denying them compensation for expenses incurred and work performed during the course of a reopened bankruptcy proceeding, which proceeding was subsequently ordered dismissed by this court because sufficient basis for reopening had not been shown. Saper v. Viviani, 2 Cir., 1955, 226 F.2d 608. The district court's denial of compensation was based on the belief that it had no authority under 2, sub. a(18) of the Bankruptcy Act, 11 U.S.C.A. 11, sub. a(18), to award fees and disbursements of the trustee and his attorney against appellees when the bankrupt estate was without assets. In re John Viviane & Son, Inc., D.C.S.D.N.Y. 1957, 150 F.Supp. 23. Although we find it unnecessary to pass on the question of statutory interpretation decided by the district court, we agree, for reasons hereinafter stated, that the denial of compensation was proper.
 
 
 2
 The facts may be simply stated. in 1936 the bankrupt corporation, John Viviane & Son, Inc., filed a petition for voluntary bankruptcy listing a parcel of real estate in New York City as an asset. The original proceeding was closed the same year for failure of the bankrupt or the creditors to provide the required indemnity. See 2, sub. a(8) of the Bankruptcy Act, 11 U.S.C. 11, sub. a(8). Nothing further occurred until 1952 when the corporation, controlled by John Viviani as principal stockholder, conveyed the parcel of real estate to Viviani's wife, Barbara. Thereafter the property was condemned by the City of New York which was reluctant to pay the award to the title-owner of record, Barbara Viviani, because the 1936 bankruptcy proceeding had not resulted in either a discharge or a dismissal.
 
 
 3
 The City's doubts with respect to the validity of the title conveyed by the bankrupt to Barbara Viviani was ultimately responsible for initiating the chain of mishaps making up this unfortunate cycle of litigation. In order to allay the City's doubts, and thus obtain a release of the condemnation, award, the Vivianis, on behalf of the bankrupt corporation, sought in 1955 to reopen the bankruptcy proceeding which had been dead for nineteen years. The petition to reopen was frank in stating that the reason for reopening was that 'The City of New York refuses and declines to pay the condemnation award allowed until and unless the alleged bankrupt clears the title by removing the pending petition in bankruptcy either by a formal discharge or dismissal.' The petition alleged that an attempt had been made to locate all creditors listed in the 1936 petition; that nothing was owing to any of them who had been located; and that the bankruptcy proceeding had been forgotten until the City had raised the matter in connection with the condemnation of the property listed in the 1936 proceeding as the only asset of the bankrupt.
 
 
 4
 On the basis of these allegations the district court reopened the 1936 bankruptcy proceeding and reappointed the same referee who had considered the case earlier. The referee in turn appointed appellant Saper as trustee, and Saper appointed appellant Ross as his attorney. The trustee and his attorney examined the bankrupt and conducted an investigation into its affairs. They concluded that the conveyance to Barbara Viviani was a fraud on several remaining creditors. They thereupon brought a turnover proceeding to set it aside and to enjoin the city from paying the condemnation award to anyone other than the trustee.
 
 
 5
 The district court denied the application for a turnover order upon the theory that the property had long since been abandoned by the creditors. 132 F.Supp. 633. On appeal, this court on its own motion held that the reopening after nineteen years was erroneous, and directed 'dismissal of the motion for its reopening and all steps subsequent thereto.' 226 F.2d 608, 612. Appellants then brought the present proceeding some twelve months later by filing an application for appropriate costs pursuant to 2, sub. a(18) of the Bankruptcy Act, 11 U.S.C.A. 11, sub. a(18). The district court denied compensation, holding that the fees and disbursements to a trustee and his attorney could only be paid from the brankrupt estate pursuant to 62, sub. a(1) and 64, sub. a(1) of the Bankruptcy Act, 11 U.S.C.A. 102, sub. a(1), 104, sub. a(1), and could not be assessed against other persons under 2, sub. a(18) of the Act, 11 U.S.C.A. 11, sub. a(18).
 
 
 6
 Appellants contend that whenever it is equitable to do so 2, sub. a(18) of the Act confers broad power on the district court to assess 'costs,' including attorney's fees, upon parties as well as upon the bankrupt estate. In support of this contention they argue that the Vivianis improperly set the bankruptcy machinery in motion by filing a petition to reopen which contained materially false statements of fact; that appellants' expenses and labors were occasioned by this wrongful act; and that the Vivianis should not benefit, partly at the expense of appellants, by our dismissal of the 1955 proceeding which, they say, the Vivianis were responsible for improperly inducing the district court to commence.
 
 
 7
 Our decisions quite properly reflect a strong reluctance to allow the assessment of any fees and costs in bankruptcy proceedings which are not expressly authorized by the Act, or that are not well established by judicial precedent. See, e.g., In re Friedman, 2 Cir., 1956, 232 F.2d 151, certiorari denied Klein v. Brandt & Brandt Printers, Inc., 1956, 352 U.S. 835, 77 S.Ct. 53, 1 L.Ed.2d 54; Guerin v. Weil, Gotshal & Manges, 2 Cir., 1953, 205 F.2d 302. The policy of the Bankruptcy Act is best served by a conscious effort to reduce expenses of administration to a minimum. See, e.g., Realty Associates Securities Corporation v. O'Connor, 1935, 295 U.S. 295, 55 S.Ct. 663, 79 L.Ed. 1446; Lane v. Haytian Corporation of America, 2 Cir., 1941, 117 F.2d 216; In re Realty Associates Securities Corp., 2 Cir., 1934, 69 F.2d 41, certiorari denied Bondholders' Committee v. Realty Associates Securities Corp., 1934, 292 U.S. 628, 54 S.Ct. 631, 78 L.Ed. 1482. And as a general rule no compensation or reimbursement can be had unless a tangible benefit has been conferred on the estate to the advantage of the creditors as a whole.
 
 
 8
 But these principles are not without exceptions.[1] It is unnecessary to decide whether a case, in which the filing of a petition containing material false statements necessitates expenses and labor on the part of a trustee and his attorney, falls within these exceptions. Because of the prior history of this case and our view of the record, we think this question is not presented here.
 
 
 9
 Our disposition of the appeal in the turnover proceeding, 226 F.2d 608, 612, ordered 'dismissal of the motion for * * * reopening and all steps subsequent thereto.' On remand, the district court entered such an order. We think that our mandate and the subsequent district court order deprived the district court of jurisdiction to entertain appellants' present application to tax appellees with their fees and disbursements. Our mandate directing dismissal of the entire proceedings did not reserve jurisdiction in the bankruptcy court to pass on applications for compensation. The application for compensation was not made until almost a year later. Appellants, in a petition for rehearing filed with this court following our decision directing dismissal of the entire proceedings, interpreted our mandate as leaving them 'without any means of being compensated for their services' and they urged this as one ground for granting them a rehearing. The petition for a rehearing was denied; and this denial, when considered in the light of our opinion, made explicit what was implicit in our mandate-- the appointments of the trustee and his attorney were ordered to be vacated, and thus could not be the basis for any allowances for fees or disbursements.
 
 
 10
 In any event, even if the district court had jurisdiction to entertain appellants' present application, we do not think that the record supports appellants' contention that their fees and disbursements were incurred as a result of any material misstatements by the Vivianis in their petition to reopen. The petition to reopen was decided upon by the Vivianis' lawyer as the best method of obtaining a release of the condemnation award, and the petition revealed this purpose. To be sure, it failed to state that the property had been conveyed to Barbara Viviani some three years before and that the condemnation award was to be paid to her. But this omission did not affect the course of the proceedings or damage the appellants. It is apparent that everyone involved knew at an early stage that the property had been conveyed in 1952 by the bankrupt to Barbara Viviani. The only question was whether, as appellees contended, it was an effective conveyance, or, as appellants contended, a fraudulent conveyance. The petition to reopen alleged that the realty condemned was the only asset of the corporation. Whether this statement referred to the assets listed in 1936, or the assets as of the date of the petition to reopen, it is quite clear that no one was misled and no one was injured by this allegation. Nor are appellees, any more than appellants, chargeable with the district court's initial error in granting the reopening of the 1936 proceeding.
 
 
 11
 Affirmed.
 
 
 
 [1]
 For example, it has been customary for the receiver's expenses in a receivership which has been improperly procured to be taxed to those who procured the receivership. In re St. Lawrence Condensed Milk Corp., 2 Cir., 1925, 9 F.2d 896; In re Charles W. Aschenbach Co., 2 Cir., 1910, 183 F. 305; In re Lacov, 2 Cir., 1905, 142 F. 960. See also, In re Northern Indiana Oil Co., 7 Cir., 1951, 192 F.2d 139; Smith v. Central Trust Co., 4 Cir., 1944, 139 F.2d 733; In re Swofford, D.C.D.Minn.1952, 112 F.Supp. 893; In re Schocket, D.C.D.R.I.1910, 177 F. 583; Petition of Kurtz Brass Bed Co., D.C.E.D.Mich.1918, 250 F. 116