In re Alan Manning **MILLER**, Bankrupt.

Julius M. **GERZOF**, Plaintiff,

v.

Alan Manning **MILLER**, Defendant.

Bankruptcy No. 77–B–1368.

United States Bankruptcy Court,
E. D. New York.

Oct. 5, 1981.

**444**

Louis P. Rosenberg, Brooklyn, N. Y., for plaintiff.

Alan Manning Miller, pro se.

**ROBERT JOHN HALL,** Bankruptcy Judge.

On May 30, 1979, Julius M. Gerzof (hereinafter the "Plaintiff") commenced an adversary proceeding objecting to the discharge of Alan Manning Miller (hereinafter the "Bankrupt"). Almost two years to the day later and on the eve of trial, the Bankrupt filed a waiver of discharge. The Plaintiff now moves for an order taxing costs of $4,155.35 in disbursements and $12,167.00 as an attorney's fee against the Bankrupt personally. For the reasons hereinafter stated, the Court grants the motion in part and denies it in part.

### Background

On May 27, 1977, the Bankrupt filed a voluntary petition in bankruptcy. Thereafter, and amidst allegations of concealed assets, the Plaintiff spearheaded an investigation into the Bankrupt's affairs.[1] This resulted, over a period of about two years, in the discovery of several thousand dollars

---

1. On August 30, 1977, the Bankrupt filed an application to withdraw his petition. Seven creditors submitted affidavits in opposition. The Court, by a decision dated October 7, 1977, denied the application based on the creditors allegations of hidden assets "and the fear that the [B]ankrupt is using this Court to delay and deter creditors from pursuing him to collect their debts."

of unscheduled assets which were subsequently recovered by the estate.[2] Consequently, the Plaintiff filed a complaint objecting to the Bankrupt's discharge grounded primarily on a concealment of assets theory.[3] This action, interrupted frequently[4] by motions and appeals[5], progressed tortuously to trial. Finally, the trial date having been set for May 29, 1981 and the anticipated exhibits having been introduced into evidence at the May 11, 1981 pre-trial conference, the Bankrupt filed a waiver of discharge on May 28, 1981.

The Plaintiff, alleging bad faith on the Bankrupt's part by virtue of his alleged concealment of assets, as well as his continued defense against the objections to discharge based thereon, now asks that his disbursements and counsel fees be taxed personally against the Bankrupt.

Section 2(a)(18) of the Bankruptcy Act provides that the Bankruptcy Courts are invested with jurisdiction to:

> Tax costs and render judgments therefor against the unsuccessful party, against the successful party for cause, in part against each of the parties, and against estates, in proceedings under this Act.

Furthermore, Bankruptcy Rule 754(b) provides for the taxation of costs in an adversary proceeding on one day's notice.

 The Bankrupt's initial argument is that where a bankrupt has filed a waiver of discharge, notwithstanding that such follows upon the filing of an objection to discharge, the "objector" is not the prevailing party and therefore is not entitled to costs.

The Court finds no merit to this argument. The Bankrupt apparently confuses Bankruptcy Rule 754(b) with Federal Rule of Civil Procedure 54(d). The latter provides for an award of costs to the prevailing party as of course. The former, as the Advisory Committee Note indicates, "preserves the traditional approach [in equity practice] by leaving the taxation of costs in such proceedings to the court's discretion." Consequently, a determination that Plaintiff was the prevailing party in this proceeding, as a condition precedent to the awarding of costs, is not required. *See Clark-Herrin-Cambell Co. v. H. B. Claflin Co.*, 218 F. 429 (5th Cir. 1914); *Bone v. Walsh Construction Co.*, 235 F. 901 (D.Iowa 1916). Finally, the Court finds that the Bankrupt's conduct in waiting until the eve of trial when faced with apparently insurmountable proof[6] to file his waiver created a sufficient event upon which a court of equity might tax as costs such items and expenses as the law allows. *See id.* at 902.

*The Scope of Section 2(a)(18)*

The Second Circuit has held that the policy of the Bankruptcy Act is best served by a conscious effort to reduce expenses of administration to a minimum. *Saper v. John Viviane & Son, Inc.*, 258 F.2d 826, 828 (2d Cir. 1958).

---

2. The assets were two insurance policies on the life of the Bankrupt's former wife, which were eventually auctioned by the estate for $2,000.00; a chose in action against Eugene and Jean Bedell which was settled for $2,000.00; and judgments against Bertram Dolgenas and William Stevens.

3. The second amended complaint alleged eight causes of action including making a false oath in a bankruptcy proceeding, fraudulently transferring property, failing to explain a loss of assets, failing to keep or preserve books or records and refusing to answer material questions approved by the Court.

4. The Bankrupt is a practicing criminal trial attorney. The time demands of such necessitated frequent and lengthy adjournments.

5. Over the two year period from the filing of the complaint objecting to the Bankrupt's discharge until the Bankrupt filed his waiver of discharge, there were three appeals taken to the District Court and one to the Second Circuit. All were filed by the Bankrupt and all were decided against him.

6. *See* note 2 *supra* and the transcript of the May 11, 1981 pre-trial conference. See also the transcripts of April 17, 1978 and May 15, 1978 wherein the Bankrupt refused to answer questions based on his Fifth Amendment privilege despite warnings by the Court that such refusal could, of itself, result in a denial of discharge.

446

[Consequently,] [o]ur decisions quite properly reflect a strong reluctance to allow the assessment of any fees and costs in bankruptcy proceedings which were not expressly authorized by the Act, *or that are not well established by judicial precedent.*

*Id.* (emphasis added).

*Disbursements*

Since early on, however, the courts have routinely awarded disbursements in bankruptcy proceedings to the creditor who successfully objected to the bankrupt's discharge, taxing them personally against the bankrupt. *See, e. g., In re Katz,* 23 F.Supp. 431 (E.D.N.Y.1938); *In re Simon,* 279 F. 794 (D.Mass.1922). The reasons for this were twofold. First, it was felt that to deny the creditor reimbursement would "thwart justice and discourage creditors from opposing ... discharges by dishonest bankrupts." *In re Katz,* 23 F.Supp. at 432. Second, it was taxed personally against the bankrupt because it was believed there existed no authority under the Bankruptcy Act to tax it against the estate. *Gelson v. Rudin,* 200 F.2d 31, 33 (2d Cir. 1952); *e. g., In re Kyte,* 189 F. 531 (M.D.Pa.1911). This award, granted under the authority of section 2(a)(18), *see In re Katz,* 23 F.Supp. at 432, was of course discretionary, *cf. In re Kyte,* 189 F. 531 (M.D.Pa.1911) (award denied based on bankrupt's inability to pay.)

In 1938, however, section 64(a) was amended to provide that there should be paid out of the estate (3) "the reasonable costs and expenses" of "creditors in obtaining" a "refusal" of the bankrupt's discharge. Consequently, vis-a-vis the estate, the recovery of these items became no longer discretionary, but mandated by the Act. 3A *Collier on Bankruptcy,* ¶ 64.301 at 2143

(14th ed. 1975). "But this does not mean that the Court may not assess such costs against the bankrupt[.]" *Gelson v. Rudin,* 200 F.2d 31, 33 (2d Cir. 1952). In fact, the mere lack of funds within the estate to pay the assessment has justified their imposition on the bankrupt instead. *Id.*[7]

■ Therefore, where, as here, a bankrupt has apparently concealed assets, and the creditor has expended his funds in seeking these out and preparing an objection to discharge based thereon, which after two years of legal maneuvering has resulted in a waiver of discharge, the Court feels well within its prerogatives [8] in taxing the creditor's disbursements as costs personally against the Bankrupt.

In light of the length of the litigation and the results achieved, the Court finds the disbursements claimed reasonable. Consequently, the Court awards $4,155.35 as disbursements to the Plaintiff to be paid personally by the Bankrupt.

*Attorney Fees*

■ The question of attorney fees is more problematical. As the Bankrupt correctly indicates, there exists no express authority in the Bankruptcy Act or Rules for an award of counsel fees in this type of case. Based thereon, the earlier cases refused to grant them, *see, e. g., Gelson v. Rudin,* 200 F.2d 31 (2d Cir. 1952); *In re Borok,* 50 F.2d 75 (2d Cir. 1931); *In re Simon,* 279 F. 794 (D.Mass.1922); *In re Rome,* 162 F. 971 (D.N.J.1908), and questioned the court's power to make such an award, *see Gelson v. Rudin,* 200 F.2d at 32.

Furthermore, the inclusion of a provision for counsel fees in other areas of the Act, coupled with their omission here arguably confirmed that conclusion. *Compare* sec-

---

**7.** In the instant case, the amount sought in disbursements alone equals the estate available for distribution. Therefore, either to allow this claim as a priority expense under section 64(a) or to tax it against the estate under section 2(a)(18) would leave nothing to the general creditors.

**8.** The Bankrupt argues that he has a statutory right to file a waiver of discharge, *see* Fed.R. Bankr.P. 405, and therefore, to tax costs upon

the exercise of that right is tantamount to its abrogation. The Bankrupt misses the point. The costs are not being imposed *because* he filed a waiver; they are being imposed *in spite of* his filing the waiver. In other words, they are being imposed because the Court, in exercising its discretion under section 2(a)(18), finds such equitable in light of the total history of the case.

tion 69(b) and Fed.R.Bankr.P. 115(e) *with* Fed.R.Bankr.P. 754(b).

In 1952, however, *In re Swofford,* 112 F.Supp. 893 (D.Minn.1952) confronted these questions. In *Swofford,* a secured creditor repossessed a truck in willful violation of bankruptcy proceedings. Upon the trustee's successful action for restoration, an attorney's fee was awarded. In affirming *Swofford,* the District Court reasoned:

"A bankruptcy court is a court of equity, § 2, 11 U.S.C. § 11, 11 U.S.C.A. § 11, and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act." *Securities and Exchange Commission v. U. S. Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293. Since a general court of equity in a case where the peculiar circumstances warrant may give attorney's fees as costs without statutory authority, see *Guardian Trust Co. v. Kansas City Southern Ry. Co.,* 8 Cir., 28 F.2d 233, if the circumstances of the present case so warrant, there is no question of this Court's authority to tax the attorney's fees except the query whether application of the equitable doctrine would here be "inconsistent" with the Act.

It seems obvious from the very existence of a bankruptcy court's equitable powers, that Congress did not intend to provide expressly for all of the court's prerogatives. True, the failure of Congress to provide expressly for attorney's fees in the instant situation does not, of itself, render a court's use of the equitable doctrine inconsistent with the Act. Nor is this conclusion changed in consideration of the express provisions for attorney's fees found elsewhere in the Act. Those provisions do not purport to deal generally with the allowance of attorney's fees. . . .

Section 2, sub. a, clause 18, the general provision of authority to tax costs, while not regarded as giving jurisdiction to tax attorney's fees as costs, see *Berry v. Root,* 5 Cir., 148 F.2d 945, certiorari denied 326 U.S. 755, 66 S.Ct. 91, 90 L.Ed. 453, still cannot be interpreted as denying such jurisdiction, especially in view of Section 2, sub. b, which provides,

"b. Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated."

*Id.* at 894–95.

Subsequent cases have relied on *Swofford's* logic. *See In re Carico,* 308 F.Supp. 815 (E.D.Va.1970); *In re Yeiser,* 2 B.R. 98 (B.C.M.D.Tenn.1979); *cf. In re Casper,* 338 F.Supp. 327 (E.D.Va.1972) (court has authority to award attorney fees, but denied where no bad faith found.) *See also Saper v. John Viviane & Son, Inc.,* 258 F.2d 826, 828 (2d Cir. 1958).

Moreover, in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court while reaffirming the "American rule" in equity cases that attorney fees are generally not awardable as costs said:

Also, a court may assess attorneys' fees for the "willful disobedience of a court order . . . as part of the fine to be levied on the defendant[,] *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 426–428 [43 S.Ct. 458, 465–466, 67 L.Ed. 719] (1923)," *Fleischmann Distilling Corp. v. Maier Brewing Co.,* supra, 386 U.S. [714] at 718 [87 S.Ct. [1404] at 1407, 18 L.Ed.2d 475;] or when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ;" *F. D. Rich Co. v. United States,* 417 U.S. 116 at 129 [94 S.Ct. [2157,] at 1265, 40 L.Ed.2d 703] . . . . These exceptions are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress . . . .

421 U.S. at 258–59, 95 S.Ct. at 1622 (citations and footnote omitted).

Relying thereon, the bankruptcy cases soon saw awards of attorney fees as costs in the "bad faith" as well as "contempt" situations. *See In re Love,* 577 F.2d 344 (5th Cir. 1978); *In re Scanlon,* 4 B.R. 197 (B.C.E. D.Pa.1980); *cf. In re Fulwiler,* 624 F.2d 908 (9th Cir. 1980) (per curiam); *In re New World Inns, Inc.,* 555 F.2d 662 (8th Cir.

1977) (court has authority to award attorney fees, but denied where no bad faith found.)

In summary, the Court finds it well established by judicial precedent that attorney fees are awardable as costs in bankruptcy proceedings when a party acted contemptuously or in bad faith.

■ The cases hereinbefore cited, however, wherein attorneys fees were awarded as costs dealt almost exclusively with situations in which a creditor violated a bankrupt's rights. The creditor either ignored the automatic stay, sued on a discharged debt, or brought or maintained a groundless suit objecting to the bankrupt's discharge. Apparently, such have not been uncommon events, the purpose of which were to coerce, by force of the creditor's superior economic position, a reaffirmation by the bankrupt. *See* H.R.Rep.No.95–595, 95th Cong., 1st Sess. 130–31 (1977), U.S.Code Cong. & Admin.News 1978, 5787. Understandably, the courts felt the situation justified equity's intervention.

Here, on the other hand, although the Bankrupt may have been guilty of "bad faith" in the sense that he apparently concealed assets, the Court feels that such conduct is not, in and of itself, sufficiently oppressive to justify the imposition of counsel fees as costs in addition to the statutory penalty of a denial of discharge. Having concluded so, however, the question still remains as to whether the Bankrupt's continued defense against the objections to discharge was maintained in bad faith. Or to rephrase, was the Bankrupt motivated by a reasonable belief he was entitled to a discharge, or was his purpose in defending solely to delay and multiply the Plaintiff's costs?

The Plaintiff broadly accuses the Bankrupt of making "numerous frivolous motions and appeals," and points to the Bankrupt's filing of his waiver of discharge on the eve of trial as evidence of an intention, *ab initio*, never to litigate the charge.

The Court is unconvinced. First, if the Plaintiff believed any particular motion or appeal was groundless, he could have moved for the imposition of costs then and in the appropriate forum. *See, e. g.,* Fed.R. Bankr.P. 811. To wait until now, some two years later, to make this blanket accusation is an unwieldy procedure at best. Furthermore, although it is clear that the Bankrupt filed his waiver because of the hopelessness of his position coupled with a fear of the consequences that a judicial determination of his alleged wrong doing might have on his career,[9] such is insufficient, in and of itself, to establish bad faith. The test is whether a party has proceeded, not with the intent to achieve a favorable judicial determination, but only to delay and harass his opponent. While it is possible that such was, from early on, the Bankrupt's purpose, the Plaintiff has failed to establish such. The filing of the waiver, even when on the eve of trial, is but circumstantial evidence of the Bankrupt's intent. The Court finds it at least equally plausible that the Bankrupt did not realize the hopelessness of his position until much later in the proceedings, and probably not until the May 11, 1981 pre-trial conference when a great deal of the documentary evidence was introduced. *See* Transcript May 11, 1981. Consequently, the Court declines to award an attorney's fee.

### *Conclusion*

The Court, as an exercise of its discretion, awards the Plaintiff $4,155.35 as disbursements to be paid personally by the Bankrupt but declines to award an attorney's fee.

So Ordered.

---

9. The Court, of course, does not know why the Bankrupt waived his discharge. It can only assume that the apparent hopelessness of the Bankrupt's position, *see* Transcript May 11, 1981 pre-trial conference, was the controlling factor.