**SCHLEIN et al. v. SMITH et al.**

**No. 9218.**

United States Court of Appeals
District of Columbia.

Argued Jan. 7, 1947.

Decided Feb. 24, 1947.

Mr. Herman Miller, of Washington, D. C., for appellant.

Mr. Maurice Friedman, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTYMAN, Associate Justices.

WILBUR K. MILLER, Associate Justice.

The appellants ask us to reverse a judgment of the District Court of the United States for the District of Columbia which ordered them to convey to the appellees certain real estate in Maryland and, failing that, to pay to the appellees $1,250.00, the fair market value of the property; and which, as well, awarded to the appellees

judgment against the appellants for $705.-34, with interest and costs, and the additional sum of $600.00 as a fee to the appellees' counsel.

A recital of the facts is a sordid story of usury and fraud. The appellee, Nannie Smith, is an unlettered Negro woman. For some years her daughters, Marie and Ollie Ruth Jessie, have been the owners of a small house and lot in Montgomery County, Maryland, subject to their mother's dower interest. In 1938, the Smiths were delinquent in paying taxes and the house was in need of repairs and improvements. Nannie Smith approached Maurice I. Schlein concerning a loan of approximately $500.00 to meet those needs. Schlein and his wife, Rose, were engaged in the construction business in Washington, and also made real estate loans. Some of their operations were conducted under two company names, one that of a corporation and one apparently that of a partnership or sole proprietorship. Schlein and his wife are the appellants.

Schlein agreed with Nannie Smith to lend the money. Pursuant to that agreement, and on July 12, 1938, Nannie and her daughters executed and delivered to one Warren T. Cothern, an employee of the Schleins, their promissory note for $750.00, payable at the rate of $12.00 per month plus six per cent interest. To secure the obligation, they executed to the Schleins as trustees a deed of trust on the house and lot. Upon receipt of the note and the indenture which secured its payment, Schlein paid $204.49 in settlement of past-due Maryland taxes, paid $95.00 to his own attorney for services in examining and clearing the title, and then paid $187.51 to the borrowers. Thus the Smiths obtained, in the aggregate, the sum of $487.00 as the proceeds of their note for $750.00.

Each successive monthly payment of $12.00 was met until September, 1939. When the instalment due in that month was not paid, the trustees under the deed of trust, who were Schlein and his wife, instituted a proceeding to foreclose it. They advertised that as trustees they would offer the property for sale on October 11, 1939, the sale to be on the premises. On that day, at the appointed hour, the Schleins appeared with Cothern, another of their employees, and their attorney. The appellees were not present, although Nannie was in the house. With the attorney acting as auctioneer, Cothern "bid in" the house and lot at $300.00.

Immediately after the sale, Schlein went in the house and assured the tearful Nannie that he would re-convey her home to her and her daughters upon payment of $100.00. He did not want the house, he said. She agreed to pay in "driblets." Shortly thereafter, Cothern conveyed the property to the Schleins. But the latter continued to accept payments from Nannie. Between October 16, 1939, and December 20, 1939, she paid "driblets" aggregating at least $39.00. A month or two after the sale, Nannie rented the house to one Miller and wife for $13.00 per month, with Schlein's knowledge and acquiescence. Having been told of the previous transactions, the Millers paid rent for one or two months to Nannie Smith. But in January, 1940, at the demand of the Schleins, the Millers began to pay the rent to them and had continued to do so at least through November, 1945. Despite this collection of rent from the Millers, Schlein notified Nannie Smith, early in February, 1940, that a payment of $12.00 on her note would be due on the 15th of that month. In March she paid it, and he accepted it.

In the meantime, at Schlein's instance, Miller and wife signed an instrument, dated April 18, 1940, denominated "Sales Contract" which begins thus:

"Received from Eugene Sylvester Miller & Anna D. Miller, his wife, a deposit of            Dollars ($           ) to be applied as part payment of lots ............"

This instrument, signed by nobody other than the Millers, stipulated a purchase price of $1,250.00, provided that the purchasers should pay $13.00 per month rent and $5.00 per month "to be applied on deposit" beginning May 17, 1940, and that as soon as the deposits amounted to $50.00 the payments "will be reduced to $13.00 or

more per month." But when the deposits amounted to $50.00, the payments were not reduced to "$13.00 or more" per month. Payments of $18.00 per month continued; rent payments of $13.00 each month were shown on the appellants' books as theretofore; and the extra $5.00 was credited to "Insurance and Taxes" instead of to "a/c deposit." Other provisions of the document of April 18, 1940, rather incoherent, need not be discussed.

There appears in the record another instrument of writing, dated February 18, 1941, and signed only by the Millers. It purports to be a lease between Federal Finance & Realty Company, one of the appellants' companies, as lessor, and the Millers as lessees, leasing the Smith property for $18.00 per month, beginning March 18, 1941. An option to purchase for $1,200.00, with credit for rent paid, less taxes, is embodied.

By November, 1945, the Millers had paid to the Schleins more than $1,224.00. If the sums paid by the Smiths be added, the Schleins had by that time received on account of the property at least $1,493.00. They had expended, however, only $787.66, made up of $487.00 originally disbursed, taxes of $149.10 thereafter paid, and $151.56 paid to redeem the property from an earlier tax sale to a third person.

Following these happenings, and on July 3, 1943, Nannie Smith sued Maurice I. Schlein and Rose Schlein, and the two companies sometimes employed by them in their transactions, in the District Court of the United States for the District of Columbia. After settting forth the story substantially as recited above, she prayed for an accounting and recovery of such sums as might be revealed by it to be due. She asked to be allowed to redeem the property, and that a trustee be appointed and directed to re-convey it to her. She sought damages of $5,000.00, and prayed in general for appropriate relief.

On the ground that the relief sought could not be granted without disregarding the decree of foreclosure entered by the Maryland court, a motion to dismiss the complaint was granted. An appeal having been prosecuted, this court reversed,[1] and remanded the case to the District Court. We held that only the Maryland court could set aside or modify the decree or grant the right to redeem the property. But we also held that the District Court, having jurisdiction of the parties could enter a judgment in personam, awarding damages and ordering a restoration of property taken by fraud extrinsic to the foreign judicial proceeding.

After the return of the case to the District Court, an order was entered making Nannie Smith's two daughters parties plaintiff with her. After hearing evidence, the learned trial justice found the facts to be as outlined herein. His judgment ordered the Schleins to convey the real estate to the Smiths, free of any claims by the Millers. If they should fail or be unable so to convey, judgment was awarded against them for $1,250.00, found to be the value of the property, with interest. Judgment was given also for $705.34, the difference between the sum of $1,493.00, collected by the Schleins from the Smiths and the Millers, and the sum of $787.66 disbursed by them, as heretofore shown. The court also awarded judgment for $600.00 as counsel fees.

In appealing, the Schleins assign eleven errors, many of which are related and may be disposed of together. Their suggestion that the District Court's judgment is an attack on that of the Maryland court is answered by our opinion in the former appeal of this case, the holdings of which were carefully observed in the formulation of the decree complained of here.

It was not necessary that the Millers be parties to this litigation, as their dealings with the Schleins orally and through the nebulous documents which they alone signed gave them no right, title, interest or claim in or to, or lien upon, the real estate. Whatever rights the Millers have come to them from the Schleins and are equitable in origin, without relation

---

[1] Smith v. Schlein, et al., 79 U.S.App. D.C. 166, 144 F.2d 257.

to the property itself. Schlein and his wife never made any sort of conveyance to the Millers, who entered into possession with knowledge of the facts concerning the title. If the rights of the latter were invaded, their only remedy is against the Schleins personally, not against the real estate.

With respect to the contention that counsel fees should not have been awarded, it is enough to say that the fraud discovered by the trial justice is amply substantiated by the proof, as are his other findings. We regard the fraud revealed by the record as gross in nature, practiced wilfully and oppressively upon untutored trusting victims who were long ignorant of their rights and but vaguely conscious of their wrongs. In such circumstances, it was proper to award counsel fees, under the rule concerning punitive damages stated in 8 R.C.L. 585, which we quoted with approval in Ballard v. Spruill, 64 App.D.C. 60, 74 F.2d 464, 466:

"To warrant the allowance of such damages the act complained of must not only be unlawful but must also partake somewhat of a criminal or wanton nature. And so it is an almost universally recognized rule that such damages may be recovered in cases, and only in such cases where the wrongful action complained of is characterized by some such circumstances of aggravation as willfulness, wantonness, malice, oppression, brutality, insult, recklessness, gross negligence, or gross fraud on the part of the defendant."

In permitting the appellees to recover counsel fees, in addition to other elements of damages, the District Court's decree serves simply to make them whole—to allow them again to have their property together with the rents therefrom since it was fraudulently taken from them. The decree also correctly demonstrates that the ancient law which said "Unto a stranger thou mayest lend upon usury" is no longer in effect.

We have examined the remaining contentions of the appellants and deem them as devoid of merit as those discussed herein.

Affirmed.