## GORDON v. WOODS.

### In re YOUNG CORP.

#### No. 4683.

United States Court of Appeals First Circuit.

Decided March 11, 1953.

Rehearing Denied April 27, 1953.

See 203 F.2d 363.

Morris Michelson, Boston, Mass., for appellant.

Robert A. B. Cook, Boston, Mass. (Phipps, Durgin & Cook, Boston, Mass., with him on the brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts affirming an order of the referee in bankruptcy with regard to damages incurred by the bankrupt estate by reason of the appellant's failure to fulfill his purchase agreement.

In an earlier phase of this litigation, we upheld the district court's affirmance of a previous order of the referee which denied appellant Max Gordon's petition for rescission and confirmed the sale of real estate in Fall River, Massachusetts, by the trustee in bankruptcy to Max Gordon. Gordon v. Woods, 1 Cir., 1951, 189 F.2d 76.

At the previous hearing we were informed that the parties had entered into a stipulation which provided, among other things, for the resale of the property. This resale was executed on November 15, 1950 for $96,400 which was $1300 in excess of the original selling price.

On June 19, 1951, about one month after our previous opinion, the trustee filed with the referee in bankruptcy a "Petition to Assess and Enforce Damages Against Max Gordon." Appellant filed his answer and counterclaim on August 13, 1951. At a hearing on January 23, 1952, upon appellant's motion to amend his answer, filed January 16, the referee denied appellant's "so-called defenses", as well as his objection to jurisdiction and motion to dismiss.

On April 16, 1952, the referee filed an order assessing damages against Gordon in the sum of $31,231.39, representing expenditures made and obligations incurred by the trustee in connection with the property or with the Gordon litigation. Included in this sum were various litigation expenses and attorney's fees from April 25, 1950, the date of the original sale, to the time of the hearing before him. Expenses in regard to the real estate covered the period from May 25 to December 31, 1950. Various offsets were deducted. The district court affirmed this order on June 4, 1952, stating that "Gordon has had a full hearing before the Referee on the question of costs" and that "all the damages found by the Referee were the result of the usual and customary expenses of resale."

The correctness of this determination by the court below depends primarily upon the legal effect of the amended stipulation of the parties, dated October 20, 1950 and the supersedeas bond of $60,000, which was filed on October 23, 1950.

The gist of the appellant's argument seems to be that the referee in bankruptcy had no jurisdiction to assess and enforce damages and that even if he did have jurisdiction, damages could not be awarded, but only the cost incident to the delay on appeal and the expenses of reselling the property.

The jurisdiction of the referee in bankruptcy is res adjudicata in this case and under the authorities cited in our previous decision, Gordon v. Woods, supra, we find no merit in appellant's contention that there was error in denying him a plenary trial. We do not need to rest jurisdiction, as appellant suggests, on the power of the district court to enforce liability on a supersedeas bond by summary proceedings, under the authority of our decision in John Hancock Mut. Life Ins. Co. v. Hurley, 1 Cir., 1945, 151 F.2d 751.

In computing the amount of Gordon's liability, the referee deducted from the total expenses and costs of the trustee various offsets or credits to Gordon. Among these offsets was the sum of $9,500, ten per cent of the original selling price, which Gordon had deposited when he made his original bid to purchase. The agreement for sale provides for the retention of this deposit by the trustee as liquidated damages, and Gordon urges that the trustee is not entitled to damages in addition to this deposit.

On the other hand, the trustee contends that the contract upon which the damages are based consists of the stipulation entered into between the parties, together with the supersedeas bond, and that these obligated Gordon to pay all expenses incurred by the trustee. Both these positions seem to us untenable.

The amended stipulation describes the proceeds from resale " * * * as additional security for any obligations which may now exist against or which may hereafter be imposed upon the said Max Gordon in these proceedings. * * *" The supersedeas bond obligates Gordon to " * * * satisfy the said Order in full together with costs, interest and damages for delay if said appeal is dismissed or if the Order is affirmed. * * *"

It should be noted first that the damages contemplated by this bond are quite different from those contemplated by the agreement to purchase the real estate. Since the stipulation appears to be merely a security provision not intended to affect liability, or, as the lower court held, a resale on Gordon's account, we must look initially to the agreement for sale in order to determine the amount of liability for damages caused by Gordon's failure to complete the transaction.

This agreement provides in part: " * * I/We do further agree that this sale is subject to confirmation by the U. S. Court, and in the event I/we do not completely perform within said thirty (30) days the seller may retain the 10% deposit as liquidated damages or compel specific performance hereof." We agree with the appellant's contention that, assuming conformance to the requirements embodied in §§ 339, 340 Restatements, Contracts, actual damages are not pertinent when the parties have agreed that the deposit shall represent liquidated damages. Kaplan v. Gray, 1913, 215 Mass. 269, 102 N.E. 421.

In In re Lion Overall Co., D.C.N.Y.1943, 55 F.Supp. 789, 791, the court said:

" * * . * The courts after some pulling and hauling have become more tolerant of such provisions, have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in a recovery of an amount stated as liquidated damages, upon violation of a contract, and without proof of the damages actually sustained. United States v. Bethlehem Steel Co., 205 U.S. 105–119, 27 S.Ct. 450, 51 L.Ed. 731. * * * The present rule is to look with candor if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance, and because adjusting in advance, and amicably, matters the settlement of which through courts would involve difficulty,

uncertainty, delay and expense. Wise v. United States, 249 U.S. 361, 365, 366, 39 S.Ct. 303, 63 L.Ed. 647. * * *"

However, the parties to this contract have qualified the liquidated damages provision by adding the alternate remedy of specific performance. It seems to us that what this agreement means is that the seller may retain the deposit as liquidated damages or he may choose to seek the full purchase price or actual damages. In the light of § 365, comment d of Restatement, Contracts, stating that damages for the partial breach involved in delay may be awarded with specific performance, we think that the seller here in effect reserved the right to seek actual damages in the event he was dissatisfied with his liquidated damages.

Although this reading of the agreement casts serious doubt on the validity of the liquidated damage provision, as the case is presented to us, the important point is that the parties have expressly agreed that the seller shall have his right to compensation for actual damages suffered.

Gordon contends that the trustee elected to seek damages instead of specific performance because he retained the deposit, and therefore, he urges that the amount of damages arising from Gordon's failure to purchase had been settled in the agreement to purchase, and that limits the trustee's recovery to the deposit in his possession. We do not agree with this contention because the trustee has quite clearly indicated, from the beginning of this litigation, that he is seeking actual damages and we see no reason why his retention of the deposit, in the absence of any demand for it by Gordon, prevented him from insisting upon the election which the contract contained.

Therefore, we agree with the district court that the trustee was entitled to recover for actual damages sustained as a result of Gordon's failure to make his original bid good.

The next question is whether or not the damages awarded by the referee and affirmed by the district court are proper.

Gordon disputes several items of damages, which may be summarized into two principal objections: (1) a charge for attorney's fees and litigation expenses and (2) a charge for certain expenses which contributed to the net operating loss in the real estate. The propriety of these items must be determined by reference to the original purchase agreement and the supersedeas bond.

The net operating loss seems to have been within the contemplation of the parties as a likely damage caused by Gordon's failure to take the property which he had promised to buy. Gordon now contends that the trustee did not discharge his duty to mitigate the damages and unreasonably incurred an insurance expense of $3,180, a salary expense of $2,900, and electricity and coal expenses amounting to $1,257.88. After a full examination of seven witnesses, the referee found that these expenses were reasonable, and the district court has found likewise. We do not perceive that these findings are clearly erroneous. Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A.

However, we think otherwise with respect to the largest item of damage, namely, $14,600 for attorney's fees in connection with this litigation. Neither the purchase agreement nor the bond justifies the imposition of this liability on Gordon.

In the absence of any express provision in the contract, we cannot say that the attorney's fees incurred in enforcing a contract are a part of the damages contemplated by the parties as a consequence of its breach. Cf. United States v. Standard Oil Co., 9 Cir., 1946, 156 F.2d 312. Since attorney's fees are not covered by the contract in this case, the assessment must be justified, if at all, as a proper exercise of equitable discretion, or as a legitimate "cost or damage for delay" under the supersedeas bond.

The power of a federal court of equity to allow attorney's fees and litigation expenses as costs to a successful party was extensively analyzed and reviewed in Guardian Trust Co. v. Kansas City Southern Ry. Co., 8 Cir., 1928, 28 F.2d 233, reversed on other grounds, Kansas City So. Ry. v. Trust Co., 1930, 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659. Later, in another full discussion of the matter, the Supreme Court pointed out the

elementary principle for the exercise of this power, when it said in Sprague v. Ticonic Nat. Bank, 1939, 307 U.S. 161, 166, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184:

"That the party in a situation like the present neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursements of the kind for which the petitioner in this case appealed to the chancellor's discretion. Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation. * * * In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice. But here we are concerned solely with the power to entertain such a petition."

We think that the circumstances in this case do not warrant the imposition of attorney's fees and litigation expenses as costs to be charged to Gordon. We perceive no "exceptional case" or "dominating reasons of justice" which would warrant calling these a cost.

Ordinarily, in the absence of any finding of bad faith or fraud in pressing the litigation, attorney's fees in excess of the nominal statutory amounts are not a part of the costs of litigation. Schlein v. Smith, 1947, 82 U.S.App.D.C. 42, 160 F.2d 22; Ballard v. Spruill, 1934, 64 U.S.App.D.C. 60, 74 F.2d 464; Ritter v. Ritter, 1943, 381 Ill. 549, 46 N.E.2d 41. Furthermore, this award of attorney's fees cannot be justified under the power of equity courts to grant such awards in unusual cases, as, for example, where the plaintiff is compensated for expenses incurred in bringing an action on behalf of others. Sprague v. Ticonic Bank, supra; United States v. Anglin & Stevenson, 10 Cir., 1944, 145 F.2d 622, certiorari denied 1945, 324 U.S. 844, 65 S.Ct. 678, 89 L.Ed. 1405.

Also, these fees cannot be brought within the obligation of the supersedeas bond because thay are not "damages for delay if said appeal is dismissed or if the order is affirmed." Reading the bond literally, it seems to us that they are not damages arising from delay in satisfaction of the order to consummate the sale.

Not long ago this court had occasion to consider another aspect of this problem of the nature and extent of liability under a supersedeas bond. John Hancock Mut. Life Ins. Co. v. Hurley, supra. In that case, 151 F.2d we said at page 755 that "Since the supersedeas bond was given in compliance with Rule 73(d), the scope of liability under the bond should be interpreted in the light of the provisions of the rule." Furthermore, our opinion now was intimated by the statement at p. 756 that " * * * in a supersedeas bond, the principal and surety have obligated themselves to pay the damages resulting to the appellee from the delay incident to an unsuccessful appeal * * *."

Rule 73(d), F.R.C.P. provides in part: " * * * When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such sum as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay, * * *." Reading this rule literally, it seems clear that the parties contemplate only security for the judgment and damages for the delay in its execution. We can find neither reason nor authority for extending a provision which is expressly made to cover only damages sustained by reason of delay in execution of a judgment so that it would cover damages or expenses sustained by reason of the entire litigation.

In Ripka v. Philco Corporation, D.C.N.Y. 1945, 65 F.Supp. 21, 39, affirmed 2 Cir., 1946, 154 F.2d 501, the court said: " * * * The expression 'damages for delay' means 'damages arising from the delay occasioned by the proceedings in error or appeal, which are properly legal damage to the party delayed'. American Trust Co. v. Speers Sand & Clay Works, D.C.Cir., 60 F.2d 994, 997, And that was the interpretation given to the provision of the old 29th Rule of the United States Supreme Court in relation to

supersedeas bond where the expression used was 'just damages for delay.' * * *"

Thus, the referee and the district court were not warranted in allowing attorney's fees as costs and they cannot be held to be damages for the delay on the judgment. The judgment here consisted in the order for Gordon to pay the price and take the property, and the net operating loss suffered by the trustee in carrying the property was properly considered as an element of the damage caused by Gordon in failing to make his bid good. However, the attorney's fees involved in enforcing the trustee's legal rights are not within the American concept of damages. See Developments in the Law—Damages, 61 Harv. L.Rev. 113, 134 (1947).

Therefore, we vacate that part of the damage assessment which required Gordon to pay for the trustee's attorney's fees and for his litigation expenses.

The judgment of the district court is vacated and the case is remanded to that court for entry of judgment in conformity with this opinion.