In the Matter of Eloise Jackson CASPER,
Bankrupt.

No. 598–71–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Feb. 17, 1972.

328

H. Lee Addison, III, Norfolk, Va., for Eastern Finance.

Arthur C. Ermlich, Norfolk, Va., for Eloise Jackson Casper, Bankrupt.

MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

The only significant issue on this review is the authority of a Referee to impose an attorney's fee of $100.00 against Eastern Finance Corporation in favor of the bankrupt, in a proceeding by Eastern Finance Corporation to determine the nondischargeability of a debt due to Eastern which allegedly arose by reason of giving a false financial statement.

While we entertain no doubts as to the correctness of the Referee's ruling that the debt due Eastern was clearly dischargeable, it is necessary to give some factual background prior to reaching the ultimate issue.

Petitioner, the wife of Willie L. Casper, Jr., filed her voluntary petition in bankruptcy on July 22, 1971. She listed Eastern as a creditor holding security on furniture, fixing the value of the security at $200.00, and the debt at $600.00. It is a typical no asset case.

The bankrupt and her husband had thirteen prior loans with Eastern. The financial statement does not segregate the debts of the wife from those of the husband. Eastern's manager admitted that the previous four financial statements only listed about three or four debts. On some date prior to January 6, 1971, Eastern obtained a judgment on the then outstanding loan. Urging the judgment debtors to refinance, Eastern mailed a loan application to the home address of the bankrupt, at the bottom of which Eastern wrote, "List debts & sign." The application was completed by the bankrupt and her husband, and either mailed or taken to Eastern by the husband where, upon receipt, one S. P. Donaldson "witnessed" the signatures, although it is clear that the latter employee of Eastern did *not* witness the bankrupt's signature.

The loan application in the sum of $850.00 listed four creditors aggregating $1,936.00, including Eastern as a creditor to the extent of $573.00. On January 29, 1971, when the existing judgment was refinanced, the bankrupt and her husband received only $9.98

in cash. At the time of bankruptcy, the indebtedness due Eastern was $657.70, and the previously obtained judgment had not been released or marked satisfied. At the time of refinancing the account was ninety days delinquent.

The record does not reveal the approximate date each listed creditor's indebtedness was incurred. Apparently, however, the parties and Referee proceeded under the assumption that all, or practically all, of the debts existed as of the refinance date, namely, January 29, 1971. Since bankruptcy intervened on July 22, 1971—only six months later—this is a fair assumption although, if the issue was doubtful, this would be material. In any event, the bankrupt listed in her schedules six creditors holding security with a total indebtedness of $3,385.15, and a value of $800.00.[1] There were ten creditors whose claims are listed as unsecured aggregating $4,980.37. Presumably, the wife was liable on all debts, although we must recognize the fact that the debts of the husband are frequently listed in the wife's petition and vice versa. Thus, comparing the total indebtedness of $8,365.52 with the listed indebtedness of $1,936.00 as of January 29, 1971, or roughly four times as great, it did give rise to some suspicion that the refinanced loan had been procured through the medium of a false financial statement.

The first meeting of creditors was fixed for August 10, 1971, and an order was entered fixing September 24, 1971, as the last day for filing objections to discharge and for the filing of applications, as provided in section 17c(2) of the Bankruptcy Act, to determine the dischargeability of debts claimed to be nondischargeable. Within the time permitted by said order, Eastern filed its application under section 17c(2), 11 U.S.C. § 35(c) (2), claiming that twelve of the listed creditors had not been included in the loan application.

The hearing conducted on October 20, 1971, manifestly supports the Referee's findings and conclusions that Eastern did not rely upon the financial statement in any degree and that the bankrupt's representations therein contained were not made with an intent to deceive. Moreover, the Referee accepted the bankrupt's testimony that she believed the requirement was to list *only* the joint debts of husband and wife. While the loan application does refer to "all my/our debts and liabilities" in the printed form, handwritten instructions were to "List debts & sign." The Referee has cited, in his certificate of review, ample authority to support his conclusions from the facts presented. Manifestly, no representative of Eastern attempted to explain the form application or otherwise interrogate the now bankrupt or her husband.

The Referee mentions that Eastern was guilty of bad faith. He is essentially correct on these lines where he states that the signatures were not actually witnessed by S. P. Donaldson, but we do not believe that this is the "bad faith" contemplated for the allowance of attorney's fees. However, he also states that bad faith is exhibited by Eastern's failure to release the judgment when the entire matter was refinanced. We cannot agree as to this point. Sections 8-382, 383, 384 of the Code of Virginia 1950 provide a method for the satisfaction, or discharge of judgments, a procedure to which the bankrupt and her husband did not turn. While it is commendable to suggest that a creditor should mark a judgment satisfied or discharged upon the refinancing of the judgment, no bad faith inference may be drawn by reason of the failure to so mark the judgment in the absence of compliance with the notice provisions

1. Included in this list is Eastern's indebtedness of $600.00, and a debt due Mutual Savings and Loan Company in the sum of $1,000.00 due on the purchase of an automobile which must have been repossessed or wrecked as the security held is marked as no value.

of Sections 8–382, 383. Particularly is this true where the judgment is entered in a court not of record as, presumably, was the situation in this case.

■ In assessing the attorney's fee in the sum of $100.00, payable to the bankrupt by Eastern, the Referee relies upon several authorities, the principal one being Local No. 149 I. U., U. A., A. & A. I. W. v. American Brake Shoe Co., 298 F.2d 212 (4 Cir., 1962). We consider this case inapposite although, we concede, wide discretion must be vested in the trier of fact such as the Referee herein. The *American Brake Shoe* case involved an award of attorneys' fees against a party who, without justification, refused to abide by the award of an arbitrator whose decision had been enforced by the district court and affirmed on appeal.

The award of attorneys' fees has its predicate in Sprague v. Ticonic National Bank, 307 U.S. 161, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939), where a fund was for all practical purposes created for the benefit of others, with the court adding the caveat, "In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice."

In Gordon v. Woods, 202 F.2d 476 (1 Cir., 1953), rehearing denied 203 F.2d 363, a referee's decision awarding "damages" in a bankruptcy proceeding was reversed as to the allowance of attorney's fees, with the court noting:

"However, the attorney's fees involved in enforcing the trustee's legal rights are not within the American concept of damages."

■ We must observe that section 17c(2) gave a legal right to Eastern, or any other creditor, to file the application for determination of the dischargeability of the debt. We find nothing in the history of the amendment to the Bankruptcy Act which justifies any inference that Congress intended to punish a creditor for filing an application which proves to be unsuccessful. Indeed, the purpose of the amendment was to protect a bankrupt from the punitive effect of the denial of a discharge in bankruptcy as to *all* debts. The amendment, P.L. 91–467, effective December 18, 1970, provided a ready solution to the vexatious problem presented to bankrupts facing state court post-bankruptcy litigation alleging fraud in obtaining money or property on credit through the use of a written false financial statement. While it may be argued that loan companies will be encouraged to use section 17c(2), and perhaps abuse the right given, it was for Congress to limit the use if it so desired. Moreover, loan companies were never reluctant to file specifications of objections to the discharge, and assuredly it is preferable to resolve the issue of dischargeability of a particular debt in the bankruptcy proceeding.

The Referee refers to this court's opinion in In the matter of Richard Darriel Carico, In Bankruptcy No. 2611, Newport News Division, reported only in the April 1970 Journal of the National Conference of Referees in Bankruptcy. That case involved a creditor who, after the discharge, secured a state court judgment by the creditor's misrepresentation to the state court as to whether the creditor had been listed in the bankrupt's schedules. An attorney's fee was allowed under this set of facts.

■ Under P.L. 91–467, section 14 of the Bankruptcy Act, 11 U.S.C. § 32, was amended by adding subdivision f. which provides that an order of discharge shall "enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt." This was made necessary by the line of cases following Helms v. Holmes, 129 F.2d 263 (4 Cir., 1942), which apparently afforded a creditor, after discharge, the right to "take one shot" at the bankrupt in the state court and, if the bankrupt failed to appear and plead his discharge in bankruptcy, the judgment became binding. As so often happens the bankrupt, knowing that the creditor's debt was discharged in bankruptcy, seldom

appeared in the state court. To prevent this abuse, section 14f(2) provided for the entry of an injunction. We believe that Helms v. Holmes, supra, and other related authorities have been overruled by P.L. 91–467, and we do not hesitate to say that a creditor, acting in violation of section 14f(2), could be assessed with an attorney's fee occasioned by the difficulties encountered in reopening the bankruptcy case as provided by section 17c(6), 11 U.S.C., § 35(c) (6). Acts in violation of the injunctive provisions of section 14f(2) may properly fall within the rule established in Local No. 149 I. U., U. A., A. & A. I. W. v. American Brake Shoe Co., supra.

█ We draw analogy between proceedings under section 17c(2) and the filing of specifications of objections to the discharge of a bankrupt. In the latter proceeding many specifications of objections are overruled, abandoned, or otherwise deemed to be wholly without merit. We agree with In re Gillardon, 187 F. 289 (E.D.Pa., 1911), where the court said:

"* * * I am acquainted with no decision where such an allowance [an attorney's fee to the attorney for the bankrupt] has been charged against the objecting creditors."

█ To permit the allowance of an attorney's fee to stand would stifle all creditors in the exercise of their legal rights granted by Congress. Each creditor filing an application under section 17c(2) would be confronted with the possibility that an attorney's fee would be awarded if the application is denied. And while this is a clear case of nonreliance upon the admittedly false financial statement, the substantial difference between the number and amount of debts listed on the loan application and bankruptcy schedules would seem to justify the inquiry occasioned by Eastern's application under section 17c(2).

For the reasons herein stated, the order of the Referee directing the payment of an attorney's fee in the sum of $100.00 is reversed, but in all other respects is affirmed. No costs are allowed to either party.