CO–BUILD COMPANIES, INC.
Charlotte Amalie, St. Thomas
and
WARREN L. TRAFTON and ROGERS P. BRESSI, Christiansted,
St. Croix

v.

VIRGIN ISLANDS REFINERY CORPORATION,
c/o John D. Merwin, Esquire, Christiansted, St. Croix
Latimer & Buck, Inc., Co-Build Companies, Inc.,
Warren L. Trafton and Rogers P. Bressi, Appellants

## Nos. 77-1664 and 77-1743

## United States Court of Appeals

### Third Circuit

## Argued December 6, 1977

## Filed February 13, 1978

H. Robert Fiebach, Esq. (Wolf, Block, Schorr & Solis-Cohen), Philadelphia, Pennsylvania, *for appellants Latimer & Buck, Inc. and Co-Build Companies, Inc.*

529

F. ANTHONY MOONEY, ESQ. (HALE AND DORR), Boston, Massachusetts, *for appellants Warren L. Trafton and Rogers P. Bressi*

JOHN D. MERWIN, ESQ. (MERWIN, ALEXANDER & O'BRIEN), Frederiksted, St. Croix, V.I., *for appellee*

Before ADAMS, ROSENN and HUNTER, *Circuit Judges*

OPINION OF THE COURT

ADAMS, *Circuit Judge*

This appeal presents the question whether the trial court erred in determining that a liquidated damages provision in a sales contract pertaining to Virgin Islands real estate barred the recovery of actual damages by the seller when the buyer refused to go ahead with the transaction. We have concluded that it was not error in this case to limit the plaintiffs' recovery to the amount contemplated by the liquidated damages clause.

A.

Plaintiffs, Co-Build Companies, Inc. (Co-Build), Warren L. Trafton, and Rogers P. Bressi, agreed on April 10, 1974, to sell two parcels of land located on the island of St. Croix to defendant Virgin Islands Refinery Corporation (VIRCO). The first parcel of land consisted of 201.35 acres, and it was to be sold for $4,201,920, of which $315,000 was to be paid by the buyer as a deposit.[1] The second parcel, totalling approximately 21 acres, was to cost $954,352, and was to be paid for at the closing.[2]

---

[1] A note for $315,000, bearing interest at 6% per year since October 1, 1973, was to be delivered by the buyers to the sellers when the contract was executed. The note was to be payable by June 30, 1974, or at closing, whichever was earlier. The remainder of the purchase price for the 201.35 acres—$3,886,920—was to be paid on the closing date in cash or by certified check.

[2] The trial court treated the two contracts as constituting one transaction. Counsel in their briefs and in their oral arguments did not question this approach. Accordingly, we have accepted that view in this opinion.

Prior to the closing, which was to occur no later than November 15, 1974, the buyers delivered to the sellers a note for $315,000, the amount of the deposit. But the sale itself was never consummated. On November 18, 1974, the plaintiffs' filed a complaint seeking specific performance, and on February 11, 1975, VIRCO filed a counterclaim for return of the deposit that had been paid to the plaintiffs.[3]

The two parcels of real estate covered by the sale agreements were part of a larger tract subject to a first mortgage held by the Correa family. There was another lien on the property, which was evidenced by a second mortgage held by Latimer & Buck, Inc. On January 20, 1975, the Correa family declared the first mortgage to be in default and initiated foreclosure proceedings. It apparently had been the expectation of the sellers that the Correa mortgage would be satisfied by the purchase price paid to them by VIRCO. When VIRCO defaulted on the contracts and the Correa family sought to foreclose on the mortgage, Co-Build found it necessary to institute bankruptcy proceedings under Chapter XI of the Bankruptcy Act, and did so on February 28, 1975.

After the bankruptcy judge enjoined VIRCO from taking further action on its counterclaim against Co-Build, the District Court in the Virgin Islands, on May 5, 1975, stayed all proceedings in the case. More than one year later, on October 27, 1976, after the bankruptcy judge had issued an order providing that all matters in the action should be determined by the district court, the district judge lifted the stay. In its directive of October 27, 1976, the trial court granted plaintiffs' motion for leave to proceed with pre-trial discovery. Additionally, it set the dates by which discovery was to terminate and the trial was to

[3] Plaintiffs asserted that at all times they had been willing to perform their contractual obligations. In response, VIRCO maintained that its refusal to tender performance had resulted from the plaintiffs' prior breach of their contractual duties.

531

commence, and granted plaintiffs' motion to amend the complaint in order to substitute a prayer for monetary damages instead of the prayer for specific performance.[4]

The substitution of a request for monetary relief in place of the one for specific performance was necessitated by the financial condition of plaintiffs, who had insufficient funds with which to retire the outstanding debt on the land in question, and thus were unable to tender the land free and clear of encumbrances so as to demand specific performance on the part of VIRCO. Consequently, the plaintiffs amended their complaint, and the defendants filed an answer in response to it.

Plaintiffs later moved for summary judgment with respect to the issue of liability. VIRCO sought summary judgment so as to limit the plaintiffs' recovery to liquidated damages in the amount of the deposit, relying on a paragraph in the sales agreements dealing with the deposit as liquidated damages.[5]

After granting both motions, the district court entered an order for the plaintiffs for the sum stipulated as liquidated damages. Plaintiffs appealed the judgment that restricted their recovery to the amount set forth in the liquidated damages clause.

## B.

■ The law applicable to the present dispute is that of the Virgin Islands, for the agreements in question arose

---

[4] In addition, the trial court granted plaintiffs' motion to substitute Latimer & Buck, Inc., for Co-Build as a party plaintiff. Latimer & Buck, Inc., was the transferee of all of Co-Build's right, title and interest in the contracts with VIRCO.

[5] The clause, incorporated in each agreement, read:

11. Purchaser's Default. Should purchaser fail to complete settlement or otherwise default hereunder, all sums deposited by Purchaser hereunder shall be retained by seller, either on account of the purchase price or as liquidated damages as seller shall elect, and in the latter event, this Agreement shall be and become null and void and neither party shall have any obligation hereunder.

in the Virgin Islands, the situs of the land covered by the agreements is in the Virgin Islands, and the contracts entail no significant relationship outside of the Virgin Islands. However, our attention has been drawn to no case law of the courts of the Virgin Islands bearing on the subject of concern here.

■ When no precedents relate specifically to the adjudication of a Virgin Islands dispute, the courts are directed to turn to the various Restatements of Law, approved by the American Law Institute, which are to provide the rules of decision for such cases "in the absence of local laws to the contrary."[6] Thus, since the law of the Virgin Islands should be applied to the present case, and since there are no Virgin Islands' precedents which are applicable, we must look in the first instance at the relevant provisions in the Restatement of Law, Contracts.

■ § 339(1) of the Restatement, which elaborates the governing principles regarding liquidated damages, provides:

(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

The rule stated in § 339(1) is made applicable by § 340 to situations, such as the one here, involving liquidated damages. As § 340 provides:

---

[6] Title 1, § 4 of the Virgin Islands Code provides:

The rules of the common law, as expressed by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

See Skeoch v. Ottley, 6 V.I. 241, 377 F.2d 804, 810 (3d Cir. 1967).

A sum of money or other property deposited by a promisor as security for performance by him and against loss to the other party, to be forfeited in case of breach, may be either a penalty or liquidated damages in accordance with the rule stated in § 339, (1).

The Restatement thus calls for a two-part inquiry. First, is the amount that is said to be liquidated damages a "reasonable forecast of just compensation"? Second, is the harm from the breach—as viewed at the time that the contract is made, not at the time of breach[7]—"incapable or very difficult of accurate estimation"?

As to the first point, the district court concluded that the sum retained by the plaintiffs was "a fair and reasonable estimate of the actual harm" that would be incurred by the plaintiffs in the event of a breach by the buyer. The trial judge noted that the funds deposited by VIRCO amounted to between 6 and 9% of the total purchase price provided by the contracts of sale. This sum, said the district court, compares favorably with the figures accepted as reasonable by other courts dealing with real estate agreements.

With regard to the second point, relating to the harm that would result from the breach, the district court stressed that the plaintiffs did not make an issue of the matter. As the court wrote, "[p]laintiffs do not contest, and it is well settled, that the harm flowing from the breach of a real estate sales contract" is so difficult to ascertain in advance that the enforcement of a stipulated amount of damages contained in such a contract is justified. As support for its view, the district court referred to § 1064 of Corbin on Contracts (1964), where it is written:

The injury caused by breach of a contract for the conveyance of land is not capable of such reasonably exact measurement as to prevent enforcement of an advance agreement that is not unconscionable.

---

[7] See 11 Williston on Contracts, § 777 (3d· ed., 1968).

Accordingly, although the district court did not discuss the issue in detail, it is clear that, in the view of the trial judge, this case involves a transaction as to which a reasonably accurate total of the damages resulting from the breach would have been "incapable or very difficult" to estimate.

In their brief on appeal, the sellers contend that the analysis of the controversy here should not stop with a consideration of the precepts embodied in the Restatement of Law, Contracts, but also should encompass "such authorities as the court may find to be well reasoned on a common law approach." Consonant with this view, sellers refer to cases in a range of jurisdictions which, they maintain, compel a result different from that reached by the district court.

First, they argue that the presence of a liquidated damages clause in the contracts does not preclude an award of actual damages. This contention is said to rest upon three propositions embodied in the case law: (1) clauses providing for the forfeiture of funds paid to the seller by the buyer as liquidated damages are for the benefit of the seller; (2) the seller is to be given "the right to sue *on the contract* notwithstanding a clause which purports to restrict" its remedies to liquidated damages; and (3) the seller's right to sue on the contract will be eliminated only in exceptional cases.

The core of the sellers' argument is proposition (2): that sellers such as the plaintiffs may "sue *on the contract*" despite the presence of a clause providing for liquidated damages. Although that general principle cannot be disputed, it is misleading as stated, for it is ambiguous with regard to the particular remedy sought as the result of the present suit. Plaintiffs seem to assume that all remedies— notably, contractual damages as well as specific performance—are available when courts determine that a seller has a right to "sue on the contract" notwithstanding the

535

presence of a liquidated damages clause. However, an examination of the cited cases reveals that this interpretation of them is unwarranted. For the authorities referred to by the plaintiffs deal with situations in which courts have held that a seller is not bound by a liquidated damages provision that is not clear and unambiguous when the seller seeks *specific performance*. In the action at hand, the plaintiffs amended the complaint so as to change their prayer from specific performance to damages on the contract. As a consequence, the authorities to which the sellers refer are not pertinent to the factual situation here.

In Biscayne Shores v. Cook, 67 F.2d 144, 146 (3d Cir. 1933), for instance, a panel of this Court held that the existence of a liquidated damages clause in the contract in question should not be taken to negative the doctrine that such a clause is for the benefit of the vendor, and it cannot be held to deprive the vendor of the benefit of his option to sue on the contract and vindicate "the right of *full performance* upon the part of the vendee." (emphasis added) Moreover, in Kilsheimer v. Rose & Moskowitz, 257 F.2d 242, 246 (2d Cir. 1958), it was concluded that ". . . appellants must be bound by the law which strongly indicated that they would be subject to a *specific performance decree*." (emphasis added) And the court in Roth v. Hartl, 75 A.2d 583, 586 (Pa. 1950), in ordering specific performance, noted that "[t]he presence in . . . a contract of a provision for liquidated damages will not restrict the remedy thereto or bar specific performance unless the language of the part of the agreement in question . . . shows a contrary intent."[8]

---

[8] Further, the sellers have not dealt with the authorities cited by the district court in its opinion—and again by the purchaser in its brief—which hold that a valid liquidated damages provision does preclude an action upon a contract for actual damages. See Puget Sound Power & Light Co. v. Shulman, 526 F.2d 1210 (Wash. 1974); TransWorld Airlines v. Travelers Indemnity Co., 262 F.2d 321 (8th Cir. 1959).

Second, sellers contend that there exist cases, similar to the present action, in which courts have held that liquidated damage clauses do not prevent claims for damages for breach of contract, and that these cases should be followed here. The difficulty with such an argument is that the authorities referred to by the sellers elaborate principles which—rather like the one discussed above—are inapplicable to the present case.

█ For example, in Harris v. Dawson, 360 A.2d 706 (Pa. Super. 1976), in which a buyer defaulted on a real estate contract, the court held that the clause in question did not preclude the seller's enforcement of his contractual rights. But Harris stressed that the deposit on the property covered by the agreement totalled only $100, while the full price for the property was $60,000. In such circumstances, the court said, the down payment denominated as liquidated damages was not a reasonable forecast of just compensation, and as such could not be construed as an acceptable limit on the seller's recovery:

If the plaintiff's suit for the difference between the contract price and the price realized on resale were to be treated as an action for damages rather than an enforcement of the contract, we would be compelled to treat the $100 limitation *void as a penalty* in view of its unreasonableness in the light of actual damages. (emphasis added)[9]

In the present case, by contrast, the deposit of $315,000 was a substantial sum of money, and cannot be said to be so clearly unreasonable that in effect it would operate as a penalty if enforced as a limit on the sellers' recovery.

The sellers also refer to Gordon v. Woods, 202 F.2d 476 (1st Cir. 1953), as support for their position. In Gordon, the buyer of a bankrupt's real estate at a public auction refused to go through with the purchase, and the trustee in bankruptcy filed a petition seeking recovery of

---

[9] 360 A.2d at 708.

actual damages. The court held that the trustee was entitled to recover from the purchaser damages amounting to the net loss incurred by the trustee in operating the realty prior to resale to a third party, despite the presence in the parties' agreement of a liquidated damages provision. In reaching that conclusion, the court noted that its "reading of the agreement casts serious doubt on the validity of the liquidated damage provision. . . ." 202 F.2d at 479. Gordon is thus distinguishable from the present case, in which the liquidated damages provision agreed to by the parties is valid. Moreover, the analysis in Gordon is specifically tied to the facts of that case, in which the seller apparently had been able to resell the property to a third party and then had sought to recover actual damages from the buyer. Such a factual configuration is not presented in this appeal. Further, the court in Gordon noted that ". . . the important point is that the parties have expressly agreed that the seller shall have his right to compensation for actual damages suffered." 202 F.2d at 479. No such express agreement exists in this case.

Plaintiffs advance two additional contentions based on the particular facts of this case. They urge that inasmuch as the liquidated damages provision agreed upon by the parties contemplates an "election" by the seller to sue either "on account of the purchase price or as liquidated damages," and since in their view such an election was made impossible in the present situation, it follows that they could not have made an election within the terms of the liquidated damages provision. And thus, they claim, they should not be limited by it. This position is based on the assumption that the sellers were forced, in effect against their will, to shift from seeking specific performance to demanding damages on the contract when it became clear that they could not tender the land free of an unpaid mortgage. Consequently, the argument goes, be-

cause of financial necessity—and not because of a free "election" of remedies—the sellers should be allowed to seek damages on the contract.

The sellers' view of themselves as, in effect, passive and nonvolitional actors who were unable to "choose" any remedy except specific performance is untenable. As the purchasers point out, no allegation has been set forth which contradicts the proposition that the sellers willingly mortgaged their land, contracted freely and agreed without compulsion to the terms of the agreement with VIRCO. In addition, the very existence of a liquidated damages provision in the default clause demonstrates that the parties foresaw the possibility of breach.

This is thus a case in which the sellers simply lacked the financial means to tender the land in order to seek specific performance by the buyer. That fact of its own force does not undermine the possibility of an election of remedies by the sellers.

Plaintiffs' fourth argument consists basically of an appeal to equitable considerations. The sellers assert that the result reached by the district court is unjust because it allows the buyer to "profit from its own wrong"—for, they contend, the buyer consciously delayed the closing of the deal and ultimately breached the agreement, and in the aftermath of the buyer's breach, the sellers were put in a position that made it impossible for them to seek specific performance.[10]

The district court's response to such claim is convincing. In seeking summary judgment on the issue of

[10] In particular, the sellers claim that VIRCO undertook to stall the closing of the transaction until the mortgage held by the Correa family was in default and the Correa's sought to foreclose on it. "Once foreclosure had been accomplished, VIRCO would argue that sellers could no longer deliver title, were not entitled to specific performance, and were merely relegated to the amount of the deposit as liquidated damages." Appellants' brief at 9. The appellants assert that the buyers pursued this strategy by filing "dilatory motions," including a motion for extension of the deadline by which to answer or otherwise plead in response to the plaintiffs' complaint.

damages, the court stated, VIRCO sought merely to "enforce a contractual provision mutually agreed upon by the parties." Although the sellers might have been able to meet the mortgage payments on the land if VIRCO had not defaulted, the fact that VIRCO did default by itself does not give rise to the conclusion that sellers' recovery is not limited by the provision in the liquidated damages clause. As the district court also noted, the problem facing the sellers "is a function not solely of VIRCO's default, but equally as much of plaintiffs' lack of careful planning in entering into the real estate sales agreements with VIRCO." Under such circumstances, we cannot say that the district court erred in determining that the equities of the situation did not require the denial of VIRCO's motion for summary judgment.

## C.

■ We have concluded, in sum, that under the Restatement of Law, Contracts and the cases pursuant to it, a court may enforce a liquidated damages clause in a real estate sales contract where the clause provides for a reasonable deposit and the harm from breach is difficult to estimate in advance. In such a case, except in extraordinary circumstances, a seller who sues a buyer for breach of contract is restricted in his remedy to the amount of the deposit or to specific performance. If the parties desire to reach a different result, they should include in their agreement a provision indicating such an intention.

■ In applying these principles to the case at hand, and after carefully considering the contentions raised by the sellers, it is our view that the district court did not err in limiting the sellers' recovery to the amount of the deposit.

Accordingly, the judgment of the district court will be affirmed.