**AUGUSTUS BEAUPIERRE, Plaintiff**

v.

**JULIEN INDUSTRIOUS, d/b/a INDUSTRIOUS AUTO REPAIR and/or INDUSTRIOUS CAR–RITE AUTO CENTER, Defendant**

Civil No. 1079-1981

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 30, 1983

DESMOND L. MAYNARD, ESQ., St. Thomas, V.I., *for plaintiff*

LEONARD B. FRANCIS, JR., St. Thomas, V.I., *for defendant*

HODGE, *Presiding Judge*

## MEMORANDUM OPINION

### I.

May a mechanic who repairs a vehicle be liable in damages to the owner, where the owner has refused to pay the repair bill and the mechanic has refused to relinquish possession because of the non-payment and has failed to comply with the statutory lien law? May a mechanic, in the absence of legal or contractual authority, charge storage fees for the repaired vehicle during the period of retention of possession for the nonpayment? These are the questions presented in this case in which the mechanic's lien law must be analyzed in order to provide the answers.

For the reasons which follow, the court resolves the first issue in the affirmative and the second issue in the negative.

## II.

Plaintiff is the owner of a 1976 Buick four-door sedan, which he operates as a part-time taxi, as a vehicle to transport supplies to his restaurant business, and as a vehicle for family transportation. Defendant is a licensed mechanic who operates an auto repair business in St. Thomas, Virgin Islands. During July 1981, because plaintiff's vehicle was losing power while being driven uphill, he took it to defendant for repair. After receiving the vehicle, defendant advised plaintiff that the torque converter of the transmission needed to be replaced and that a new one would cost $121.00 plus approximately $150.00 for its installation. Plaintiff agreed to the replacement and defendant accomplished the repairs, billed the plaintiff, and the plaintiff paid the bill in full that same day, at which time he received the repaired vehicle.

Less than thirty days later, plaintiff experienced the same problem with his vehicle and returned it to defendant who told him that the new torque converter was defective. The parties agreed to the installation of another torque converter for which plaintiff paid before again obtaining possession of the repaired vehicle. Less than one week later, the vehicle was giving a similar problem and the plaintiff had to return the vehicle to defendant once more. This time, however, the defendant claimed that the transmission filter was bad, and after changing the filter and fluid, he included in his bill a charge for labor which plaintiff refused to pay. When plaintiff objected, defendant agreed to eliminate the charges for labor from the bill and plaintiff paid the balance in full and again left with the vehicle.

On the very next day, similar problems developed with the vehicle, except that this time it was worse than before. The lack of power was now accompanied by a hissing sound and the vehicle had to be towed to the defendant's garage, for which the defendant paid the towing charges. This time defendant stated that the problem was not with the torque converter but with the clutches of the transmission. After repairing the clutches that same day, November 12, 1981, defendant billed plaintiff for $280.70. Plaintiff refused to pay that bill, blaming defendant's prior inefficiency in repairing the vehicle for the existing problem, and demanded possession of his vehicle. Defendant refused to release the vehicle to plaintiff and declared that he was retaining its possession until he was paid in full.

It is defendant's refusal to return the vehicle to plaintiff that has

resulted in this action for replevin and damages which was filed on December 1, 1981. However, since plaintiff's complaint was accompanied by a legally authorized demand for delivery of personal property, defendant was forced to return the car to plaintiff on December 10, 1981, and it has operated efficiently since its return. Plaintiff claims that during the twenty-eight-day period when he was denied possession of his vehicle he suffered damages of $700.00 for vehicle rental, $300.00 for loss of business profits, and $300.00 for loss of taxi profits. In response to the complaint, defendant denies liability and counterclaims for payment of the final bill of $280.70 plus storage charges of $10.00 per day. No verified nor timely lien claim was filed in the office of the recorder of deeds by the defendant within the time allowed by law and none has been filed to date.

III.

A. *Mechanic's Lien Law*

■ In what appears to be a widespread misinterpretation of the mechanic's lien law,[1] many mechanics and auto-repair shop owners seem to believe that once they have repaired a vehicle and the bill is unpaid, they are free to retain possession of that vehicle for an indefinite period of time. Such a belief is erroneous. Because 28 V.I.C. § 581, infra, authorizes the retention of possession of personal property until the charges are paid, this misinterpretation is understandable; however, § 581 must be construed with reference to § 587, infra, which denies such benefits when the claim is not timely recorded, and with reference to the other sections of 28 V.I.C. Ch. 25 (Chapter 25) regarding liens on personal property.[2]

---

[1] The use of the term "mechanic's lien" refers to liens affecting real or personal property. 28 V.I.C. Ch. 12 (Construction Liens); 28 V.I.C. Ch. 25 (Liens on Personal Property). Since at common law no lien upon land was recognized, statutes were enacted to authorize such liens which became known as mechanic's liens. Thus the term was generally understood to refer only to liens affecting land. Later, the term was expanded to include liens affecting buildings and other improvements on the land, and still later, to liens affecting personal property. Thus, although the term "mechanic's lien" may be somewhat misleading because it now encompasses liens by contractors, subcontractors, artisans, tradesmen, mechanics, and laborers, it is of historical significance as a statutory extension of the common law. See Tiffany, Real Property Ch. 40 (1939); Restatement of Security § 59 (1941). Since this case involves a repaired vehicle, the term "mechanic's lien" is used to refer to the lien on personal property authorized by 28 V.I.C. Ch. 25.

[2] The rules of the common law, as expressed in the American Law Institute's Restatement of the Law, are our rules of decision where they are applicable and when there are no local laws to the contrary. 1 V.I.C. § 4. A common law lien is

Although the provisions of our mechanic's lien law are based primarily on the 1921 codes, our research has discovered no published opinions for our guidance. Consequently, it is necessary to examine the appropriate sections of Chapter 25 in order to properly dispose of the issues raised in this case.

██ Under § 581, a person has a lien for labor or materials under the following circumstances:

> Any person who makes, alters, repairs, or bestows labor on any article of personal property at the request of the owner or lawful possessor thereof shall have a lien upon such property so made, altered, or repaired or upon which labor has been bestowed, for his just and reasonable charges for the labor he has performed and the material he has furnished, and such person may hold and retain possession of the same until such charges shall be paid.

V.I. CODE ANN. tit. 28, § 581 (1967). This section imposes its own limitation on the right to retain possession by being applicable only where "just and reasonable charges" are unpaid. The clear implication is that unjust and unreasonable charges will not justify retention of possession of the personal property in question. But in addition to this qualifying language of § 581, an even more significant limitation on its applicability is imposed by § 587, which requires the recording of the claim within thirty days after rendition of the services in order to perfect the lien and enjoy the benefits of the chapter. That section provides, in part:

> *Within 30 days after the rendition of services,* or after performing the work or labor, *mentioned in sections 581* and 582 of this title, *every person who claims the benefit of this chapter shall file for record in the recorder's office* of the judicial division where the property is situated, *a claim* which shall be verified by the oath of himself or some other person for him to the effect that the affiant believes the same to be true. . . . (Emphasis added.)

V.I. CODE ANN. tit. 28, § 587 (1967). The italicized language unambiguously imposes a condition precedent, i.e., the timely

---

based solely on possession, no foreclosure is authorized, and it has unlimited life. Restatement of Security § 59, Comment a, §§ 72(1) and 81 (1941). Since the statutory lien does not depend upon possession for its validity, since it may be foreclosed, and since it has a limited life, it constitutes a local law to the contrary of the common law, thereby rendering the common law inapplicable in this case. See, Varlack v. S.W.C. Caribbean, Inc., 13 V.I. 666, 550 F.2d 171 (3d Cir. 1977).

recording of a claim, before any benefit of Chapter 25 can be enjoyed. Since § 581 and § 587 are both a part of Chapter 25, the § 581 provision authorizing retention of possession is not triggered until and unless the § 587 condition precedent is satisfied.

■■■ In addition, the lien may be enforced by filing an action in court if the charges claimed are not paid within three months, provided the claim was timely and properly recorded in the first instance. 28 V.I.C. §§ 583, 589 (1967). Even where the claim is timely and properly recorded, the life of the lien is limited to six months from the date of recording, unless an action to enforce the lien is commenced within that time. 28 V.I.C. § 586. This limitation on the duration of the life of the lien, coupled with the denial of the benefits of the chapter for not recording the claim, established conclusively that the language of § 581, regarding the retention of possession until the charges are paid, must be construed with reference to the other sections of Chapter 25, and is not intended to authorize retention for an indefinite period. It therefore follows that unless the claim is timely recorded after rendition of the services, the protection of the mechanic's lien law is not available to a person who retains possession of another's personal property after improving that property by labor or materials. Consequently, one who refuses delivery of a repaired vehicle for nonpayment of the repair bill does so at his own risk, and may therefore be liable in damages to the owner of the vehicle for conversion of the property, where he fails to comply with the applicable provisions of law. See, United Engine Parts, Inc. v. Reid, 284 Or. 421, 584 P.2d 275 (Or. 1978).

■ The view that defendant and others similarly situated are entitled to an automatic and unconditional 30-day period of retention is misplaced because it is clearly contrary to the language, intent, and spirit of the law. Since no protection from liability is granted until and unless the law is complied with, there is no 30-day grace period of impunity without such compliance.

■ Moreover, the appearance that defendant's retention was lawful because he redelivered the vehicle to plaintiff before the expiration of the 30-day filing period is merely superficial. The question is not when defendant returned the vehicle but whether he filed his lien and when he did so. Since in this case no lien was ever filed by defendant, the date of redelivery of the vehicle has no effect whatsoever on the issue of statutory compliance. If defendant complied with the law, his retention was lawful. If he did not, the reten-

430

tion was unlawful. Welded Tube Co. v. Phoenix Steel Corp., 512 F.2d 342 (3d Cir. 1975).

In applying the foregoing legal analysis to the facts of this case, it is clear that the defendant is not entitled to any of the benefits of the mechanic's lien law because of his failure to record his lien claim within thirty days after the rendition of the services. Indeed, he filed no claim whatsoever with the office of the recorder of deeds. Thus, the § 581 authority to hold and retain possession of the vehicle until the charges are paid is not applicable in this case, not even for thirty days, and defendant, by failing to comply with the requirements of the law, withheld the plaintiff's vehicle unlawfully and at his own risk. United Engine Parts, Inc. v. Reid, supra. See also, 11A V.I.C. § 9—203.

■ Moreover, the fact that the vehicle was returned to the plaintiff after twenty-eight days of refusing to do so only serves to limit the time exposure of defendant to damages. See, Restatement (Second) of Torts, § 922(2) (1979). It does not vitiate the operation of § 587, which requires a timely and verified filing of the lien claim in the recorder's office, if he intends to benefit from the "retention of possession" provision of § 581. Thus, anyone in defendant's position may, after repairs, deliver the vehicle to the owner, despite the nonpayment, and still take advantage of the other provisions of the mechanic's lien law with respect to filing the lien claim (§ 587), filing an action to enforce the lien (§ 589), and sale of the repaired vehicle to satisfy the judgment (§ 592). Indeed, it appears that unless mechanics and auto-repair shop owners intend to follow the recording procedure within the thirty days, they would be wise to avoid retaining possession of repaired vehicles and instead to utilize the other available benefits of the law. This is because of the provisions of 5 V.I.C. Ch. 23 regarding demand for delivery of personal property, which authorizes an action by an owner to recover possession of personal property, and upon the posting of sufficient surety, requires the marshal to take the property from the defendant and deliver it to the owner. 5 V.I.C. §§ 211–222 (1967). Plaintiff in this case invoked those provisions and was able to obtain possession of his vehicle from the defendant. Hence, the major strength of the mechanic's lien law is not in the retention of possession of the personal property but in the timely and proper recording of the statutory lien claim, and the filing of an action to enforce the lien by sale of the repaired property, if necessary.

■ Here, the defendant's failure to comply with the mechanic's

lien law makes his retention of the vehicle unlawful and renders him liable in damages to the plaintiff for its conversion.

B. *Damages*

While plaintiff claims damages for conversion, defendant demands payment of the final repair bill and storage charges.

With respect to plaintiff's damages, the court finds that the reasonable expenses incurred and losses suffered during the four-week period of refusal of delivery of the vehicle amount to $700.00 for vehicle rental and $300.00 for loss of taxi profits, a total of $1,000.00. Plaintiff is not entitled to recover the $300.00 for loss of business profits because his recovery for vehicle rental compensates him not only for loss of use but also for loss of business profits. In other words, since the rented vehicle replaced the vehicle possessed by defendant, it was necessarily used for the same purposes, except for use as a taxi. Although plaintiff urges the court to award damages for certain periods when he did not rent a vehicle, there was ample proof of the availability of substitute vehicles for his use or rental, and plaintiff has not asserted that he was financially unable to do so. However, plaintiff is entitled to recover damages for loss of taxi profits because there is no evidence that he used a rented vehicle as a taxi. Besides, a vehicle rented from a licensed agency cannot be lawfully used as such. See, V.I. CODE ANN. tit. 20, § 301 (1976). Thus, compensation for vehicle rental does not constitute compensation for loss of taxi profits. Since compensatory damages is intended to make the prevailing party "whole" the sum awarded herein for vehicle rental and loss of taxi profits are sufficient to accomplish that purpose. See McCormick, Damages 560, § 137 (1935).

With respect to defendant's counterclaim, the court finds that plaintiff had a legitimate basis for questioning the final bill and the efficiency of defendant. Having taken the vehicle to defendant four times within such a short period, with the same or similar complaint, plaintiff was justified in claiming that the charges were unjust and unreasonable under the circumstances. Nevertheless, the defendant has established that the defect at the time of the final repair work was in the clutches, not in the torque converter. Thus, since the charge in question was for separate and distinct repair services which were required, and since plaintiff does not allege that they are exorbitant, I find the final bill to be just and reasonable. Accordingly, the court concludes that the bill for services rendered in the sum of $280.70 is chargeable to the plaintiff. It should

be noted, however, that neither the reasonableness of the charge nor the defendant's entitlement to it constitutes a legal basis for retention of the vehicle where there is no compliance with the mechanic's lien law.

As with the indefinite retention of property, there is a concomitant widespread practice of charging storage fees to customers for that retention. Despite the coercive nature of the retention, and the demands of the owners for delivery, these storage charges appear to be demanded routinely by mechanics or repair-shop owners. Defendant has cited no authority under law or contract for these charges, and the court can find none. Indeed, the mechanic's lien law does not specifically authorize such charges, even where the retention of possession is lawful, despite the fact that it does authorize special agreements of the parties. 28 V.I.C. § 584. In addition, it recognizes different purposes and services, and distributes authority accordingly. Thus, if it had intended to do so, the legislation could have authorized storage charges in § 581, with respect to those in the business of repairs, as it did in § 582(2), with respect to those in the business of storage. Comparable provisions of Pennsylvania law have been similarly construed in Mitchell v. Standard Repair Co., 275 Pa. 328, 119 A. 410 (1923) and Welded Tube Co. v. Phoenix Steel Corp., supra. Since the imposition of storage charges for the retention of possession of repaired personal property is not so authorized, there is no statutory basis for the defendant's demand.

Moreover, no proof has been submitted of any contractual arrangement between the parties that would justify either the imposition of the storage charges or the method of computation of those charges. Hence, in absence of both statutory and contractual entitlement, defendant has no authority to charge plaintiff for the involuntary storage of his vehicle. See, Welded Tube Co. v. Phoenix Steel Corp., supra. Since the defendant is not entitled to the benefits of the mechanic's lien law, there is stronger reason to reject his charges of $10.00 per day for storage of plaintiff's vehicle. The court is therefore satisfied that defendant is not entitled to such charges.

IV.

In view of the foregoing, plaintiff's damages at $1,000.00 will be reduced by defendant's charges of $280.70. Accordingly, judgment will be entered in favor of plaintiff in the net sum of $719.30, plus costs and a contribution toward plaintiff's attorney's fees.

## JUDGMENT

For the reasons stated in the accompanying memorandum opinion, it is hereby,

ORDERED, ADJUDGED AND DECREED that plaintiff, Augustus Beaupierre, is awarded judgment against defendant Julien Industrious, d/b/a Industrious Car-Rite Auto Center, in the net sum of $719.30; and it is,

FURTHER ORDERED that defendant's counterclaim for storage fees is DISMISSED; and it is,

FURTHER ORDERED that plaintiff shall be awarded his court costs and a contribution toward his attorney's fees, after submission of appropriate affidavits and approval by the court.