**DAVID ARCHER, Plaintiff**

v.

**RAMSAY MOTORS, INC. and ROBERT RAMSAY, Defendants**

Civil No. 999/1983

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

August 7, 1985

HENRY V. CARR, ESQ. (Law Offices of ROBERT J. MURNAN), St. Thomas, V.I., *for plaintiff*

MARIA T. HODGE, ESQ., St. Thomas, V.I., *for defendants*

MEYERS, *Judge*

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff sues defendants for converting his BMW automobile and defendants, on the other hand, assert three counterclaims for monies owed. This matter was tried by the Court without a jury. The major issues, among others, before this Court are whether the common law lien supersedes the local statutory mechanic's lien, codified at 28 V.I.C. § 581 et seq., and whether defendants were legally justified in detaining plaintiff's vehicle on the ground that plaintiff owed defendants money.

For the reasons set forth below, the Court holds (1) that the applicable law to the facts in the instant case is the local mechanic's lien statute, and (2) defendants are liable for conversion of plaintiff's vehicle.

### THE FACTS

Plaintiff was employed by defendant Ramsay Motors, Inc. (Ramsay Motors) as manager of its body repair shop from April, 1983, to October 7, 1983, when he was terminated. Defendant Robert Ramsay (Ramsay) was and still is President of Ramsay Motors. Around June, 1983, Archer brought his 1979 BMW car (BMW) to Ramsay Motors so that the car could be repaired. The BMW was a total wreck and, therefore, inoperable. Archer worked on his BMW on the company's time for approximately four and a half hours as was clocked in on the back of a work order form. The hourly rate for labor at Ramsay Motors was $22.50 at that time.

Sometime while in the employ of Ramsay Motors, Archer had removed a carburetor from a disabled Ford Escort belonging to Ramsay Motors and installed it in a Ford Escort that Archer owned. On October 7, 1983, Archer was terminated from the employ of

Ramsay Motors for taking the carburetor. Ramsay also accused Archer of removing an alternator, a wiring harness, and some chrome from the Ford Escort. Ramsay told Archer on the day he was terminated to take his BMW off the premises, but since the BMW could not be driven on its own power, Archer arranged for its removal the following day. When Archer returned to remove his BMW, Ramsay told him that he could not take it until he had returned the carburetor. Some days later, Archer did return the carburetor, but he was still not permitted to take his vehicle. Ramsay subsequently learned that Archer had not paid him for the four and one-half hours work that Archer performed on his BMW. This fact, he claims, gave him grounds for retaining Archer's vehicle.

On the same day that Archer was terminated, Ramsay came up to Archer while he was on the telephone, grabbed the telephone from his hand, and told Archer to get off his telephone and off his premises, while at the same time coming in contact with Archer. Archer claims that this contact amounts to an assault and battery and sues defendants.

Archer claims that certain tools valued at approximately $735.00 which he owned and which were locked in his BMW at the time he was fired, are missing. These tools, which were used, were a screwdriver set valued at $85.00, a socket kit valued at $150.00, an air sander valued at approximately $200.00, a Spanish set of wrenches valued at approximately $150.00, and body hammers valued at approximately $150.00. Archer paid $2,005 for the BMW.

Before he was terminated, Archer received $1,400 from one Bryan Leighton, which was a partial payment for repairs to be done on Leighton's car. This amount was payable to Ramsay Motors but was retained by Archer, who never disclosed the receipt of this money to Ramsay Motors.

## I. PLAINTIFF'S CLAIMS

### Conversion

Plaintiff brings this action for, inter alia, conversion and damages, as a result of defendants' refusal to return his BMW vehicle. Defendants contend, inter alia, that the common law possessory lien is applicable to the facts of this case. Plaintiff, on the other hand, argues that the statutory lien, embodied in 28 V.I.C. § 581 et seq., is applicable to the facts herein, and that defendants, not having complied with the requirements of the statute, are liable for conversion of his vehicle. Defendants argue principles of statutory construction

in support of their position. Essentially, defendants contend that a statute creating a new remedy or method of enforcing a right which existed before its enactment should not be construed as supplanting or superseding the common law, absent a legislative intent to that effect. Defendants further contend that common law liens and statutory liens may coexist and, in fact, supplement each other. The cases cited by defendants in support of their contention are neither binding nor persuasive.

The leading case in this jurisdiction that analyzed and interpreted the applicability of the local mechanic's lien statute is Beaupierre v. Industrious, 19 V.I. 424 (Terr. Ct. St.T. & St.J., 1984). There, the court drew a distinction between a common law lien and the local statutory mechanic's lien, codified at 28 V.I.C. § 581 et seq. The Court, in Beaupierre, observed that "[s]ince the [local] statutory lien does not depend upon possession for its validity, since it may be foreclosed, and since it has a limited life, *it constitutes a local law to the contrary of the common law*, thereby rendering the common law inapplicable in [that] case." Id. at 429.[1] (Emphasis added.) Defendants contend that this distinction between the common law lien and the local statutory lien, as discussed in Beaupierre, that is to say, the retention of possession of the vehicle, as is the situation in the instant case, as opposed to relinquishment of possession, as was the case in Beaupierre, is dispositive as to the issue of which lien law should be applied. While the Court finds defendants' argument somewhat persuasive, we will not be bound by such a specious argument.

■ ■ Mechanic's lien statutes have been enacted in every state of the union and, thus, is a matter of state law. 53 Am. Jur. 2d, Mechanics' Liens, § 5 at 519 (1970). The bases of mechanic's lien statutes are "the doing of equity, the preventing of unjust enrichment, and the providing of restitution." Id. § 6 at 521. It is well-settled that a court may construe a statute only where the statute is ambiguous or where there is doubt or uncertainty as to the legislative intent. The rule in some jurisdictions is that mechanic's lien statutes are to be strictly construed as being in derogation of the common law. See, e.g., Dix v. Olds, 415 S.W.2d 567 (1967).

■ A lien statute which purports to cover the entire field [of mechanic's liens] should be considered to govern to the exclusion of

---

[1] It is well-settled that the rules of the common law, as expressed in the Restatements of Law, are the rules of decision in the courts of the Virgin Islands, where there are no local laws to the contrary. 1 V.I.C. § 4. See, Co-Build Companies, Inc. v. Virgin Islands Refinery Corp., 15 V.I. 528, 570 F.2d 492 (3d Cir. 1978).

common law liens. 51 Am. Jur. 2d, § 36, Liens, at 174–75 (1970). The History of Chapter 25 of Title 28 of the Virgin Islands Code, Section 581 et seq., shows that this statute, pertaining to liens on personal property, is based on the 1921 codes, Title II, Ch. 22. See, Code of Laws of St. Thomas & St. John app'd. March 17, 1921. Upon examination of Ch. 22 of the 1921 code, one finds language and provisions similar to that in 28 V.I.C. § 581 et seq. The Court, thus, concludes from the plain meaning of the terms of the existing statute that the Legislature intended this statute to govern in all cases where one makes, alters, repairs, or bestows labor on any article of personal property and subsequently asserts a lien thereon.

▪ This Court is of the opinion that the distinctions between the common law lien and the local statutory lien, as outlined in Beaupierre, renders the local mechanic's lien statute, a local law to the contrary of the common law, thereby making the common law lien inapplicable. Beaupierre at 429. 1 V.I.C. § 4. See also, Varlack v. S.W.C. Caribbean, Inc., 13 V.I. 666, 550 F.2d 171 (3d Cir. 1977). The Court, therefore, holds that the local statutory mechanic's lien law is in derogation of the common law and is, therefore, the applicable law in this case. Accordingly, the Court must turn to the mechanic's lien statute found in 28 V.I.C. § 581 et seq. Section 581 sets forth the circumstances under which a person may assert a mechanic's lien:

> Any person who makes, alters, repairs, or bestows labor on any article of personal property at the request of the owner or lawful possessor thereof shall have a lien upon such property so made, altered, or repaired or upon which labor has been bestowed, for his just and reasonable charges for the labor he has performed and the material he has furnished, and such person may hold and retain possession of the same until such charges shall be paid.

28 V.I.C. § 581 (1967).

The Court may infer and, indeed, the facts support a finding that there existed a customer-mechanic relationship between plaintiff and defendants, as evidenced by the reverse side of the work order on which Archer had clocked in approximately 4 1/2 hours, representing the time in labor spent on repairing his BMW. See, defendants' Exhibit #1. It is upon this basis that the Court finds § 581 to be applicable to the facts herein.

▪ The provisions of 28 V.I.C. § 581 et seq. impose certain stringent requirements which must be strictly complied with before

one may validly assert a mechanic's lien and thereby come under its protection and enjoy its benefits. Section 581 must be construed with reference to § 587, which requires the filing of a claim with the Office of the Recorder of Deeds within thirty days after the rendition of services, or performance of work or labor, as described in §§ 581 and 582. This section imposes a condition precedent, that is, the timely recording of a claim, before any benefit of the statute can be enjoyed. Beaupierre at 429–430. Thus, the would-be claimant must file and record his claim within thirty days after the performance of work, services, or labor, in order to perfect the lien and enjoy the benefits of this statute. It thus follows that the authority of § 581 which permits retention of possession is not triggered until and unless the conditions precedent outlined in § 587 are satisfied. Id.

■ Beaupierre also teaches that "unless the claim is timely recorded after rendition of the services, the protection of the mechanic's lien law is not available to a person who retains possession of another's personal property after improving that property by labor or materials. Consequently, one who refuses delivery of a repaired vehicle for nonpayment of the repair bill does so at his own risk, and may, therefore, be liable in damages to the owner of the vehicle for conversion of the property, where he fails to comply with the applicable provisions of law." Id. at 430. See also, Christopher v. Tuitt, 20 V.I. 88 (Terr. Ct. St.T. & St.J., 1983). The affidavit of plaintiff's counsel of March 16, 1984, filed in support of a motion for summary judgment, indicates that after inquiry and a search of the records at the Office of the Recorder of Deeds, no record with respect to a lien against plaintiff's vehicle was found. Defendant Ramsay and his daughter, Nancy, Vice President of Ramsay Motors, admitted that no lien was filed with the Office of the Recorder of Deeds.

■ Applying the foregoing to the facts of this case, the Court concludes that the defendants are not entitled to any of the benefits of the mechanic's lien law because of their failure to record their lien within thirty days after the rendition of the services. Hence, the authority given by § 581 to hold and retain possession of a vehicle until charges are paid was not triggered and, consequently, defendants cannot claim its protection. The Court, therefore, concludes that plaintiff is entitled to damages for the wrongful retention of his BMW.

## Damages

On the issue of plaintiff's damages stemming from defendants' wrongful conversion of his vehicle, the Court finds that plaintiff is entitled to an amount equal to the value of the vehicle at the time it was converted. Restatement (Second) of Torts § 927. The record establishes that Archer paid approximately $2,005 for the BMW which he bought as salvage, intending to repair it and to restore it to an operable condition. Defendants' witness, one Richard Clemo, a claims adjuster, corroborated that amount. In addition, the value of the BMW was enhanced by the amount of $431.25 as follows: $330.00 for the cost of a front panel installed, plus $101.25 for labor, discussed infra. The Court, therefore, concludes that Archer's measure of recovery for his BMW is $2,436.25, representing the value of the vehicle at the time and place of its conversion. Moreover, plaintiff is entitled to recover from defendants the value of the missing tools that were stored in his BMW. The Court finds that $600 is a reasonable sum since the tools were used and partially depreciated.

## II. ASSAULT

With respect to plaintiff's claim that Ramsay assaulted him when he came up to him and took the telephone out of his hand, the Court finds from the testimony that there was contact between Ramsay and Archer; however, the Court finds that Ramsay did not have the requisite intent to injure Archer. See, 14 V.I.C. § 291 et seq.; Restatement (Second) of Torts, § 21, comment f.[2]

## III. DEFENDANTS' COUNTERCLAIMS

A. With respect to defendants' first counterclaim that plaintiff owes them money for work Archer performed on his BMW during working hours as an employee of Ramsay Motors, the Court first finds that there existed a customer-mechanic relationship on the several occasions when Archer made repairs to his vehicle. As discussed above, this is substantiated by his clocking in approximately 4 1/2 hours of work on the work order form.[3] Since the

---

[2] Comment f states that:
  [i]n order to become liable under the rule stated in this section, it is necessary that the actor intend to inflict a harmful or offensive bodily contact upon the other or a third person or put him in apprehension of such contact. *Unless he acts with such intent, the actor is not liable for an assault although his conduct creates an unreasonable risk of causing such an apprehension.* (Emphasis added.)

[3] See, defendants' Exhibit #1.

hourly rate for labor at Ramsay Motors was $22.50, the Court finds and concludes that plaintiff is indebted to defendants in the amount of $101.25.

■ B. Defendants' second counterclaim concerns the carburetor that plaintiff wrongfully took from a wrecked Ford Escort owned by Ramsay Motors. The Court finds from the testimony that plaintiff did return the carburetor to defendants. Accordingly, the Court is satisfied that plaintiff, having returned the carburetor, is not liable to defendants. Defendants' second counterclaim will, therefore, be dismissed.

■ C. Defendants' third claim against Archer is for monies Archer received from a customer and which he wrongfully appropriated. The testimony and evidence shows that on or about August 4, 1983, Archer wrote up work order #23097 for Bryan Leighton, a customer of Ramsay Motors, for estimates on work to be done on Leighton's vehicle. The work order estimate totalled $1,879.78. Leighton paid Ramsay Motors through Archer, the amount of $1,400.00 as a partial payment; however, Archer retained this money and did not disclose its receipt or turn it over to Ramsay Motors. Archer claims that he spent $864.30 of his own funds for parts to be used on Leighton's car. Archer, however, admitted that, of that amount, $330.00 was paid for a front panel part for his own (Archer's) BMW. Consequently, the Court finds that Archer spent $534.30 for parts used on Leighton's car. This leaves a balance of $865.70 remaining from the $1,400, which the Court concludes is the amount that Archer wrongfully appropriated and, thus, owes to Ramsay Motors.

## CONCLUSION

Based on the foregoing, the Court concludes that the local statutory mechanic's lien law, i.e., 28 V.I.C. § 581 et seq., is applicable herein and is, thus, controlling in this case. The defendants failed to comply with the requirements of this statute and, therefore, are liable in damages to plaintiff for conversion of his vehicle and for the tools contained therein.

As Ramsay did not have the requisite intent to injure plaintiff when he took the phone from plaintiff's hand, no assault took place. Therefore, plaintiff's claim for assault will be dismissed.

Defendants are entitled to reimbursement for the 4 1/2 hours of labor that plaintiff expended on repairing his vehicle on company's

time and, in addition, for funds totalling $865.70 received and wrongfully appropriated by plaintiff.

## JUDGMENT

The Court being advised in the premises, it is hereby

ORDERED that plaintiff is awarded judgment against defendants for the illegal detention of plaintiff's vehicle; and it is further

ORDERED that plaintiff shall have judgment against defendants in the amount of $3,036.25; and it is further

ORDERED that defendants shall recover as compensation from plaintiff, a total of $966.95, representing monies wrongfully appropriated by plaintiff in the amount of $865.70, plus $101.25 representing 4.5 hours (at $22.50 per hour) of company time utilized by plaintiff in making repairs to his vehicle; and it is further

ORDERED that the above amounts hereby awarded to defendants shall be a set-off to the amounts herein awarded to plaintiff and shall diminish the amount of plaintiff's judgment herein awarded to that extent. Accordingly, plaintiff shall have judgment in the net amount of $2,069.30.